J-S95037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
PHILLIP McCOY, :
:
Appellant : No. 2115 EDA 2015

Appeal from the PCRA Order June 30, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0008542-2008

BEFORE: STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 28, 2017**

Phillip McCoy ("McCoy") appeals from the Order dismissing his first

Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We

affirm.

In its Opinion, the PCRA court set forth the relevant factual and

procedural history, which we adopt for the purpose of this appeal. ***See***

PCRA Court Opinion, 4/29/16, at 1-6.

On appeal, McCoy raises the following issues for our review:

1. Whether the [PCRA c]ourt erred as a matter of law, in that []
   McCoy should have been given a hearing on the merits of his
   [Petition], because it contained genuine issues of fact:

   a. [W]hether trial counsel was ineffective for the failure to
      contact an available potential fact and alibi witness?

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

> b. Whether [McCoy's trial counsel] was ineffective for his failure to object to prejudicial remarks in the prosecutor's closing statement?
>
> c. Whether other failures of trial counsel[, to] raise post-trial and post-sentence motions which may have prevented an illegal sentence, miscalculations of credit, as well as preserving issues for appeal, created ineffective assistance of counsel?
>
> 2. Whether court[-]appointed PCRA counsel's performance was deficient[,] and thereby denied [] McCoy his right to counsel in a post-conviction collateral proceeding?

Brief for Appellant at 8.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

The PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the petitioner is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011); *see also* Pa.R.Crim.P. 907. "To obtain reversal of a PCRA court's decision to

dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Paddy**, 15 A.3d at 442 (quoting **Commonweath v. D'Amato**, 856 A.2d 806, 820 (Pa. 2004)). An evidentiary hearing "is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." **Commonwealth v. Jones**, 811 A.2d 994, 1003 n.8 (Pa. 2002) (citation omitted).

In his first issue, McCoy asserts three separate bases on which he claims that the PCRA court erred by not granting him an evidentiary hearing prior to dismissing his Petition. We will address each sub-issue separately.

In his first sub-issue, McCoy contends that his trial counsel should have investigated McCoy's alibi defense, and called "key" alibi and fact witnesses, "if those people exist." Brief for Appellant at 17-18. McCoy argues that, based on the record before it, the PCRA court could not have determined whether trial counsel was ineffective for failing to call potential fact or alibi witnesses, and erred by not conducting an evidentiary hearing on this issue. **Id**. at 19.

In the **Turner/Finley**[2] "no merit" letter, PCRA counsel stated that McCoy had not provided any information regarding the identity of any of the

---

[2] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

"key" witnesses whom trial counsel had allegedly failed to interview and call at trial. *Turner/Finley* "No Merit" Letter at 12. PCRA counsel further indicated that, although he had requested this information, McCoy never responded to his request. *Id*.[3]

In its Opinion, the PCRA court addressed McCoy's first sub-issue, set forth the relevant law, and determined that an evidentiary hearing was unnecessary, as McCoy failed to establish any prong of the standard for determining the ineffectiveness of counsel based on the failure to call a witness at trial. *See* PCRA Court Opinion, 4/29/16, at 9-10, 14-15. Viewing the record in the light most favorable to the Commonwealth, as the prevailing party at the PCRA level, we agree with the reasoning of the PCRA court, which is supported by the record and is free of legal error, and affirm on this basis as to McCoy's first sub-issue. *See id*.; *see also Jones*, 811 A.2d at 1003 n.8 (wherein this Court declined to remand for an evidentiary hearing when the appellant merely asserted that counsel did not have a

---

[3] Notably, McCoy failed to identify any potential fact or alibi witness in his *pro se* PCRA Petition, Response to the PCRA court's Pa.R.Crim.P. 907 Notice of its intent to dismiss the Petition, Concise Statement of matters complained of on appeal, or in his appellate brief. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (providing that if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived); *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001) (providing that "[a] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.").

reasonable basis for his lack of action, but made no proffer of evidence as to counsel's lack of action).

In his second sub-issue, McCoy contends that the prosecutor's remarks in his closing statement were prejudicial and improper, and denied him a fair trial. Brief for Appellant at 19. McCoy claims that "none of these statements were objected to, no move for a mistrial was made, and this was never raised in a post-trial motion." *Id*. at 20. McCoy contends that the prosecutor's remarks were improper, and that he was prejudiced by them. *Id*. McCoy asserts that the PCRA court erred by not conducting an evidentiary hearing prior to dismissing his Petition because he "raised not only the claim of prosecutorial misconduct …, but also his [trial] counsel's failure to raise this matter in post-trial motions or on appeal." *Id*. at 24.

In the *Turner/Finley* "no merit" letter, PCRA counsel stated that, although McCoy had failed to identify any improper remark allegedly made by the prosecutor, PCRA counsel had nevertheless undertaken an independent review of the notes of testimony of the prosecutor's closing argument. *Turner/Finley* "No Merit" Letter at 12. Based on his review, PCRA counsel determined that none of the remarks made by the prosecutor violated McCoy's rights, or caused prejudice to his case. *Id*. at 13. PCRA counsel further determined that trial counsel was not ineffective for failing to object to the prosecutor's remarks. *Id*.

In its Opinion, the PCRA court addressed McCoy's second sub-issue, and determined that an evidentiary hearing was unnecessary, as McCoy had failed to identify any improper remark allegedly made by the prosecutor in his closing statement.[4] *See* PCRA Court Opinion, 4/29/16, at 15. Viewing the record in the light most favorable to the Commonwealth, as the prevailing party at the PCRA level, we agree with the reasoning of the PCRA court, which is supported by the record and is free of legal error, and affirm on this basis as to McCoy's second sub-issue. *See id*.; *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).[5]

In his third sub-issue, McCoy contends that, after sentencing, trial counsel filed an inadequate post-sentence Motion. Brief for Appellant at 25. McCoy asserts that the Motion "does not allege problems in the illegality of sentence, calculation of credit for time served, prosecutorial misconduct, nor does it properly preserve anything other than the discretionary aspect of sentencing for appeal." *Id*. McCoy claims that his trial counsel should have raised an illegal sentence claim, because McCoy "was sentenced utilizing a

---

[4] McCoy failed to identify any remark made by the prosecutor in his *pro se* PCRA Petition, Response to the PCRA court's Pa.R.Crim.P. 907 Notice of its intent to dismiss the Petition, or in his Concise Statement of matters complained of on appeal.

[5] Although McCoy, in his appellate brief, points to four specific remarks made by the prosecutor, McCoy's belated efforts are insufficient to overcome his failure to identify the prosecutor's objectionable remarks in the PCRA court. *See* Pa.R.A.P. 302(a).

factual predicate of serious bodily injury, which was marked by the jury as 'yes.'" **Id**. at 26.[6] McCoy argues that the PCRA court erred by dismissing his Petition without an evidentiary hearing on his claim that his sentence is unconstitutional under **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014).[7] Brief for Appellant at 26.

In the **Turner/Finley** "no merit" letter, PCRA counsel explained that the sentence imposed was legal because, for each crime, the sentence imposed was less than the statutory maximum, and within the applicable standard guideline range. **Turner/Finley** "No Merit" Letter at 14. Thus, PCRA counsel concluded that trial counsel was not ineffective for failing to

---

[6] Our review discloses that the jury verdict report included the following question, which the jury answered in the affirmative: "Does the evidence establish, beyond a reasonable doubt, that the defendant's attempt to commit murder caused serious bodily injury to Angel Carrion?" Verdict Report, 9/25/09, at 1 (unnumbered).

[7] In **Valentine**, this Court held that, in light of **Alleyne v. United States**, 133 S. Ct. 2151 (2013), and **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), the trial court could not overcome the constitutional infirmity of 42 Pa.C.S.A. §§ 9712 and 9713 by permitting the jury, on the verdict slip, to determine beyond a reasonable doubt whether the appellant possessed a firearm that placed the victim in fear of immediate serious bodily injury in the course of committing a theft for purposes of the mandatory minimum sentencing provisions of section 9712(a), and whether the crime occurred in whole or in part at or near public transportation, for purposes of the mandatory minimum sentencing provisions of section 9713(a). **Valentine**, 101 A.3d at 811-12.

challenge the legality of McCoy's sentence. *Id*. at 15.[8]

In its Opinion, the PCRA court addressed McCoy's third sub-issue, set forth the relevant law, and determined that an evidentiary hearing was unnecessary, as McCoy's sentence was not illegal because it fell within the applicable standard guideline ranges. *See* PCRA Court Opinion, 4/29/16, at 18-19; *see also id*. at 19 (wherein the PCRA court further noted that, when sentencing McCoy, the sentencing court had the benefit of a presentence investigation report, and closely considered that report, as well as McCoy's criminal history, the precise circumstances of the case, McCoy's reprehensible and dangerous conduct, his testimony at sentencing, and his personal circumstances). Viewing the record in the light most favorable to the Commonwealth, as the prevailing party at the PCRA level, we agree with the reasoning of the PCRA court, which is supported by the record and is free of legal error, and affirm on this basis as to McCoy's third sub-issue. *See id*.[9]

---

[8] PCRA counsel did not address McCoy's claim that trial counsel was ineffective for failing to raise a challenge concerning credit for time served. However, as McCoy's brief is devoid of any argument on this issue, we deem it abandoned.

[9] Our review of the sentencing Order, as well as the notes of testimony for the sentencing hearing, discloses no indication that the prosecution requested, or that the sentencing court imposed, any mandatory minimum sentence. As such, we must conclude that McCoy's reliance on *Valentine* is misplaced. Moreover, even if a mandatory minimum sentence had been imposed, it would not be subject to retroactive correction under the auspices of the PCRA. *See Commonwealth v. Ciccone*, 2016 Pa. Super. LEXIS 756, at *14 (Pa. Super. 2016).

In his second issue, McCoy contends that PCRA counsel was ineffective because he made no effort to communicate with McCoy after sending McCoy an introductory letter. Brief for Appellant at 29. McCoy asserts that PCRA counsel was also ineffective for failing to investigate McCoy's claims. *Id*. at 29-30.

In its Opinion, the PCRA court addressed McCoy's second issue, set forth the relevant law, and determined that McCoy failed to establish a layered ineffectiveness claim regarding PCRA counsel because all of McCoy's issues lacked merit. *See* PCRA Court Opinion, 4/29/16, at 20-21. Viewing the record in the light most favorable to the Commonwealth, as the prevailing party at the PCRA level, we agree with the reasoning of the PCRA court, which is supported by the record and is free of legal error, and affirm on this basis as to McCoy's second issue. *See id*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017

- 9 -

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :      CP-51-CR-0008542-2008



CP-51-CR-0008542-2008 Comm. v. Mccoy, Phillip
Opinion

PHILLIP MCCOY

7440353661

OPINION

2115 EDA 2015

**FILED**

APR 29 2016

Appeals/Post Trial
Office of Judicial Records

SCHULMAN, S.I., J.

Appellant appeals this Court's Order dismissing his Petition filed under the Post-Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546 ("PCRA"). This Court submits the following Opinion pursuant to Pa. R.A.P. No. 1925 and recommends that Appellant's appeal be denied.

**PROCEDURAL BACKGROUND**

On September 25, 2009, a jury convicted Appellant of attempted murder, aggravated assault, violating section 6106 of the Uniform Firearms Act, and possessing an instrument of a crime. On November 13, 2009, this Court sentenced Appellant to concurrent terms of fifteen (15) to thirty (30) years' incarceration on the charge of attempted murder, three and one-half (3 ½) to seven (7) years' incarceration on the charge of violating the Uniform Firearms Act, and two and one-half (2 ½) to five (5) years' incarceration on the charge of possessing an instrument of a crime.[1]

Appellant filed a post-sentence motion on November 18, 2009, which this Court denied on November 20, 2009. Appellant subsequently filed a direct appeal challenging the sufficiency of the evidence and on May 23, 2012, the Superior Court affirmed the jury's verdicts and this

---

[1] This Court imposed no sentence on the charge of Aggravated Assault.

1

Court's judgment of sentence. See Commonwealth v. McCoy, 3632 EDA 2009 (Pa. Super. 2012) (Memorandum Opinion, J. Fitzgerald).

On October 22, 2012, Appellant filed a timely PCRA Petition. On February 18, 2015, James R. Lloyd, Esquire was appointed as Appellant's counsel, and on May 12, 2015, counsel filed a *Turner/Finley* "no merit" letter and petitioned this Court for permission to withdraw. See Commonwealth v. Turner, 518 Pa. 491, 544 A.2d 927 (1988) and Commonwealth v. Finley, 379 Pa. Super. 390, 550 A.2d 213 (1988) (*en banc*).

On May 22, 2015, this Court issued Appellant a notice of dismissal pursuant to Pa. R. Crim. P. 907, advising that his PCRA Petition would be dismissed within twenty (20) days on the basis of his counsel's "no merit" letter. On June 4, 2015, Appellant filed a response to this Court's notice of dismissal, and on June 30, 2015, this Court entered an Order dismissing Appellant's Petition and granting counsel's request to withdraw his representation.

On July 9, 2015, Appellant filed a notice of appeal, and on August 24, 2015, he filed a Statement of Matters Complained of on Appeal.

## RELEVANT FACTUAL HISTORY

The pertinent facts are summarized in this Court's Rule 1925(a) opinion that was filed on April 11, 2011, which states:

Appellant was charged with shooting Angel Carrion ("Mr. Carrion") in the early morning hours of February 3, 2008. At the time of the shooting, Mr. Carrion was working as manager of the Platinum Club, which is located at 4101 Torresdale Avenue, in the city and county of Philadelphia, Pennsylvania. The Platinum Club has three floors – a first floor bar, a second-floor restaurant and bar, and a third-floor dancing area. (See N.T., 9/23/09, pp. 35-38).[2]

Mr. Carrion testified that at approximately 1:40 a.m., on February 3, 2008, he was sitting at the second-floor bar with his female companion when an altercation erupted between two groups in the restaurant area. The quarrel involved the bartender's sister, who advised Mr. Carrion that "someone hit her in the bathroom." Mr. Carrion alerted the security guard and directed that the assailant be escorted from the bar, along with her group of friends. Among this

2

group were Appellant and his fiancé, Jessica Lynch Rodriquez. (N.T., 9/23/09, pp. 36-38; N.T., 9/22/09, pp. 52-56).

While being escorted from the establishment, Appellant approached Mr. Carrion and demanded a refund for the $10 dollar cover-charge that he paid before entering the premises. As Mr. Carrion explained:

> I was speaking with the female and [Appellant] came up to me, and he was like . . . 'You better give me my fucking money,' this and this and that. And I looked at him and said, 'Money? I never took no money. I don't touch no money until the end of the night.' Then I was like, 'I don't know what you talking about, get out of my face.' And then I called the bouncer [who] came over and escorted [Appellant] out.
>
> . . .
>
> [Appellant] was screaming, 'Where's my money?' But saying it in a cursing way and screaming at me. And I'm looking at him like, 'who is this guy? I never seen him in my life.' He just started screaming at me for his money. I never took no money. I don't touch no money until the end of the night.[3]

(N.T., 9/23/09, pp. 39-41).

After Appellant was removed from the bar, Mr. Carrion resumed his conversation with his friend for the next ten (10) or fifteen (15) minutes, until she advised that she wanted to leave. Having keys to the first-floor exit, Mr. Carrion offered to escort his friend to this door, which opened onto the intersection of Torresdale Avenue and Paul Street. The door was made of glass, and as Mr. Carrion inserted the key inside its lock, he looked through the glass and saw Appellant and his friends walking southbound on Torresdale Avenue. Upon seeing Mr. Carrion, Appellant immediately turned from his friends – who continued walking southbound – and walked toward the door screaming: "There go that bitch-ass nigger right there." (N.T., 9/23/09, pp. 45-48).

Appellant threatened to "light [the] fucking bar up" while Mr. Carrion opened the door and let his friend exit. As Mr. Carrion explained, Appellant stood *alone* in the middle of Paul Street, about six (6) feet from the Platinum Club's front door, shouting obscenities and threats:

> I could see [Appellant] facing towards me. . . . He just started screaming, 'I'll light this fucking bar up.' When [Appellant] seen me he said, 'There go that bitch-ass nigger right there.' Exactly when he seen me, that was the first words. . . . He said, 'I'll light this fucking bar up.' And that's when I nodded my head, like, 'Yeah, whatever,' you know. And the lady was confused. She was scared. I let her out. I slammed the door; I locked it.

(N.T., 9/23/09, pp. 47-50).

3

After his friend exited, Mr. Carrion immediately turned his back on Appellant and locked the front door. He then heard two (2) or three (3) "pops," and was shot twice in his back. (N.T., 9/23/09, pp. 46-47, 183). Mr. Carrion did not actually see Appellant with a gun, but testified he was "positive" that Appellant was the person who confronted him both inside and outside of the bar, shouting obscenities and threats at him. Similarly, after the police had arrived and he was transported to the hospital, Mr. Carrion gave a Statement to Detective Brian Kelly and identified Appellant in a photo array as the person who screamed obscenities and threats just seconds before shots were fired. (N.T., 9/23/09, pp. 51, 61, 157-164).[4]

The Commonwealth also presented the testimony of Philadelphia Police Officer, Erica Coss.[5] Officer Coss was off-duty on the evening of the shooting and had gone to the Platinum Club around 1:30 a.m. to celebrate the birthday of her cousin, who is Appellant's fiance. She arrived at the club before her cousin, and sat by the bar talking to the bartender. Shortly after her cousin's group arrived, Officer Coss saw Mr. Carrion tell them to leave because of the altercation near the restaurant area. The officer testified that Appellant subsequently became "argumentative" and told Mr. Carrion: "If I'm leaving, I want my fucking money back. . . . I just paid to get in here, I want my fucking money back." (N.T., 9/22/09, pp. 46-52, 57-60).

After her cousin and Appellant were escorted from the premises, Officer Coss remained inside the bar for an additional ten or fifteen minutes. She left a little after 2:00 a.m. and walked southbound down Torresdale Avenue, in the direction of her vehicle. As she crossed the intersection of Torresdale Avenue and Paul Street, she saw Appellant standing in the middle of Paul Street "yelling at somebody inside the bar." Although Appellant's friends continued walking down Torresdale Avenue and were "telling [Appellant] to come on," Appellant remained in the middle of the street yelling "obscenities." At this point, Officer Coss "walked right by" Appellant and was about "a foot or two" away from him while he voiced his vitriol. When she passed Appellant by no more than six feet, the officer heard three consecutive gunshots and ran for cover in a nearby alley. The shots came from behind her, and in the vicinity of where Appellant stood, but Officer Coss never actually saw Appellant holding a gun. (N.T., 9/22/09, pp. 61-66).[6]

Detective John Hughes was among the officers who responded to the shooting. He testified that three (3) shell casings were recovered near the crosswalk on Paul Street, in front of the shattered glass door of the Platinum Club. A bullet projectile was recovered inside the club, and there was a bullet hole in the first-floor bar. (N.T., 9/22/09, pp. 153-164). Sergeant Jason Hendershot also responded to the shooting. After interviewing several patrons of the Platinum Club, he learned that the altercation that occurred inside the premises, just prior to the shooting,

involved a group of females who left in a black limousine. He therefore relayed a description of the limousine and its occupants over police radio. (N.T., 9/23/09, pp. 4-12).

The limousine, with its occupants, was stopped about forty-five (45) minutes later by Officer Jerome Jackson, as it pulled up at the 5000 block of Master Street – "almost in front of [Appellant's] house." Appellant stood outside the vehicle, near the sidewalk, and told the officer "he was [t]here to pick up his girlfriend." After obtaining Appellant's biographical information and patting him down for weapons – but finding none – the officer told Appellant he could leave. The limousine, on the other hand, was secured and ultimately towed, and its female occupants were transported to the police station to be interviewed. (N.T., 9/23/09, pp. 129-156).

On the basis of Mr. Carrion's and Officer Coss' Statements and photo identifications, Detective Kelly subsequently obtained a search warrant for Appellant's home, which was executed at 1:00 p.m. on February 3, 2008. The police found no firearm inside the residence, but recovered forty-two (42) live .40 caliber bullets. A few days later, on February 9, 2008, the police also searched the limousine pursuant to another search warrant, but recovered no firearm. (N.T., 9/23/09, pp. 17-24, 157-164).[7]

The Commonwealth's ballistician expert testified that the .40 caliber bullets recovered from Appellant's home were *not* the same brand as the shell casings recovered from the shooting scene. However, because the bullets from inside Appellant's home were .40 caliber, and the shell casings recovered from the crime scene also were .40 caliber, they all could be fired from the *same* .40 caliber gun. The expert further testified that all of the shell casings recovered outside the Platinum Club were fired from one .40 caliber gun. (N.T., 9/22/09, pp. 187-212).

Last, the parties stipulated that the certified record from the Pennsylvania State Police states that Appellant purchased a .40 caliber Smith & Wesson firearm in 1998, and purchased another .40 caliber Smith & Wesson firearm in 2004. The parties further stipulated that Appellant lacked a valid license to carry a firearm. (N.T., 9/23/09, pp. 182-186).

[2] Only the second and third floors were open at the time of the shooting.

[3] Mr. Carrion also testified that patrons are patted down by an armed security guard before entering the Platinum Club, to ensure no weapons are brought inside. (N.T., 9/23/09, pp. 71-76).

[4] Mr. Carrion's sister, Maria Mendez, also was inside the Platinum Club when Appellant and his friends were escorted from the premises. Ms. Mendez testified that Appellant was angry at Mr. Carrion because he was "getting thrown out" after having paid $10 to enter the establishment. According to Ms. Mendez, Appellant was "screaming" inside the bar, "saying he was going to light up the place." (N.T., 9/23/09, pp. 109-112).

[5] Officer Coss works in the 18th police district. The Platinum Club is located in the 15th police district. (N.T., 9/23/09, pp. 46-48).

5

[6] Following the shooting, Officer Coss simply drove home. She testified that she had "proceed[ed] to dial 911, and . . . was doing so, [but] saw a police car pulling up and . . . immediately terminated the phone call." Rather than approach the officer and disclose what she witnessed, or otherwise offer assistance, Officer Coss just drove home and never returned to the scene. (N.T., 9/22/09, pp. 65-69, 113-116).

Officer Coss did not come forward and give a Statement until 8:00 a.m. that morning, after she learned that her cousin had been taken to the police station as a witness, after she received multiple phone calls from her cousin's mother, and after her cousin was arrested for lying to the detectives. (N.T., 9/22/09, pp. 115-136). The officer claimed she was "a little bit fearful" about coming forward because she "had a family member involved," and because she knew Appellant. However, after she came forward, Officer Coss identified Appellant as the individual she saw shouting obscenities outside the Platinum Club just seconds before Mr. Carrion was shot. (Id., pp. 69-72).

Internal Affairs investigated Officer Coss' failure to timely come forward and disclose what she witnessed, and the officer was disciplined with a fifteen (15) day suspension without pay. (Id., pp. 137-144).

[7] The detective as well obtained a warrant for Appellant's arrest, but Appellant voluntarily turned himself in before the warrant was executed. (N.T., 9/23/09, p. 179).

(Trial Court Opinion, 4/11/11, at 2-7, footnotes in original).

At the conclusion of trial, the jury convicted Appellant of attempted murder, aggravated assault, possessing an instrument of a crime, and violating section 6106 of the Uniform Firearms Act. (N.T., 9/25/09, pp. 8-15).

## DISCUSSION

Appellant's 1925(b) Statement, which contains the same claims as his PCRA Petition, avers, verbatim, as follows:

NOW COMES, Phillip McCoy, via Pro-Se, respectfully files His preliminary concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b) as follows:
. . .

1.  Ineffectiveness of pretrial counsel for failure to file appropriate pretrial motions to suppress, quash or dismiss despite defendants request of counsel to do so.

2.  ineffectiveness of pretrial counsel for failing to raise PA rule of criminal procedure violation rule 529, By the Honorable Judge Oniell at preliminary on 7/3/08, Causing petitioners illegal detention by Judge who lacks jurisdiction As to

6

petitioners bail. Denying petitioner maximum opportunity to prepare a defense, Putting sanctions on petitioner prior to trial and conviction and taking away petitioners right to the presumption of innocence.

3. Ineffectiveness of trial counsel for failure to investigate key witnesses, Fact witnesses that would have been able to demonstrate that petitioner was not perpetrator of the crimes charged. These fact witnesses had they been contacted would have testified and had verifiable testimony as to events of the night in question, That would have rebutted Commonwealths witnesses non coroberating testimony, These fact witnesses were available for pretrial / trial counsel to testify at any pretrial / trial proceedings. Counsels neglect in calling any of these fact witnesses at trial denied petitioner a fair trial as no eyewitnesses or forensic evidence connects petitioner to the crime.

4. ineffectiveness of trial counsel for failure to object to prosecutors misleading prejudicial remarks in closing arguments.

5. Ineffectiveness of appellant counsel for failing to raise state created s[p]eedy trial violation, Rules of criminal procedure rule 600.

6. Ineffectiveness of appellant counsel for not articulating the challenge to sufficiency of evidence explaining that the commonwealth had not established any of the specific elements of the offenses charged to petitioner beyond a reasonable doubt. If not for error of counsel the verdict most certainly would have been not guilty.

7. Ineffectiveness of appellant counsel for failing to ask for reconsideration of petitioners sentence, or correcting petitioners sentence and time credited.

8. Ineffectiveness of appellant counsel for not correcting or arguing petitioners pro se motion, Showing numerous violations of rules of criminal procedure and procedural due process rights of petitioner.

Appellant additionally alleges that his PCRA counsel was ineffective for the following

reasons:

9. Ineffective 'retained' PCRA counsel['s] … failure to notify the court appellant had retained counsel by entering his appearance as counsel of record, failure to amend PCRA denying appellant meaningful review of additional issues of merit such as:

    A) Ineffective trial counsel, counsel's prejudicial statement in closing denied appellant meaningful adversarial testing, denying appellant of guaranteed 6th amend[ment] right to effective assistance of counsel role of an

7

advocate. (Anders v. California, 87 S. Ct. 1396). In line with (U.S. v. Cronic 104 S. Ct. 2039) Cronic (466 U.S 648).

10. Ineffective 'court appointed' PCRA counsel, counsel's failure to raise underlying issues denying Pro-Se appellant meaningful review in line with (Com v Mostellar, 633 A.2d 615).

## A. Legal Standard

The standard when reviewing the denial of post-conviction relief "is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Jones, 590 Pa. 202, 240-241 (2006). "While [appellate courts] will always defer to [the] PCRA court's factual determinations where supported by the record, the ultimate question of whether facts rise to the level of arguable merit is a legal determination." Id. Appellate courts "will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding." Id. In other words, the findings of the PCRA court "will not be disturbed unless they have no support in the certified record." Commonwealth v. Sampson, 900 A.2d 887, 890 (Pa. Super. 2006).

## B. PCRA Counsel's *Finley* Letter

PCRA counsel filed a *Turner/Finley* letter advising that he "contacted [Appellant] and reviewed all the documents" concerning Appellant's above-referenced claims, and concluded that such claims are meritless. Counsel filed a contemporaneous motion requesting permission to withdraw his representation, which this Court granted.

The *Turner* and *Finley* decisions "establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions." Commonwealth v. Pitts, 603 Pa. 1, fn. 1 (Pa. 2009). "Independent review of the record by competent counsel is required before withdrawal is permitted." Id. "Such independent review requires proof of: 1) A 'no merit' letter by PCRA counsel detailing the nature and extent of his review; 2) The 'no merit'

8

letter by PCRA counsel listing each issue the petitioner wished to have reviewed; 3) The PCRA counsel's 'explanation', in the 'no-merit' letter, of why the petitioner's issues were meritless; 4) The PCRA court conducting its own independent review of the record; and 5) The PCRA court agreeing with counsel that the petition was meritless." Id.

PCRA counsel's no-merit letter detailed the nature and extent of counsel's review of Appellant's claims, listed each issue Appellant raised in his PCRA Petition, and explained why each issue is meritless. Upon independently reviewing the record, this Court agrees with counsel that Appellant's Petition was meritless, and it therefore dismissed the Petition and granted counsel's request to withdraw his representation.

## C.    Appellant's Claims of Error

Appellant's 1925(b) Statement repeats the claims raised in his PCRA Petition, in which Appellant alleged that his trial and appellate counsel rendered him ineffective assistance. This Court will address Appellant's claims in the order that Appellant raised them in his 1925(b) Statement.

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." Commonwealth v. Koehler, 36 A.3d 121, 132 (Pa. 2012). "[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the 'ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Spotz, 624 Pa. 4, 33 (Pa. 2014). "Thus, to prove counsel ineffective, Appellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable

9

basis; and (3) Appellant was prejudiced by counsel's act or omission." Id. "If a petitioner fails to prove any of these prongs, his claim fails." Spotz, 624 Pa. 4, 33. Moreover, "it is well-settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ... test, the court may proceed to that element first." Koehler, 36 A.3d 121, 132.

**1.     Whether trial counsel was ineffective for failing to file a pretrial motion to quash, a pretrial motion to dismiss, and a pretrial motion to suppress.**

This Court agrees with PCRA counsel that a pretrial motion to quash would have been meritless because the Commonwealth's evidence supported a *prima facie* case for charges of attempted murder, aggravated assault, possessing an instrument of a crime, and violating section 6106 of the Uniform Firearms Act. "At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient evidence to establish a *prima facie* case of guilt." Commonwealth v. Karenty, 583 Pa. 514, 529 (Pa. 2005) (citations omitted here). "A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." Id. "Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." Id.

The victim in this case, Mr. Carrion, testified at trial that he quarreled with Appellant inside the Platinum Club and that Appellant called Mr. Carrion a "bitch-ass nigger" and threatened to "light up the place." Appellant consequently was ejected from the club. A few minutes later, Mr. Carrion escorted his friend to a glass exit door and saw Appellant walking

10

outside the premises. Appellant approached Mr. Carrion and again called him a "bitch-ass nigger" and threatened to "light [the] fucking bar up." After Mr. Carrion let his friend exit by way of the glass door, he turned his back toward Appellant, heard two (2) or three (3) pops, and was shot twice in the back. Mr. Carrion subsequently identified Appellant in a photo array as the person who shouted threats and obscenities at Mr. Carrion just seconds before Mr. Carrion was shot. (N.T., 9/23/09, pgs. 36-51, 61, 157-164). Independent of any other evidence, Mr. Carrion's account of the incident supported a *prima facie* case against Appellant on charges of attempted murder, aggravated assault, possessing an instrument of a crime, and violating section 6106 of the Uniform Firearms Act.

Regarding trial counsel's alleged ineffectiveness for failing to file a pretrial motion to dismiss under Pa. R. Crim. P. 600, this Court agrees with PCRA counsel that Appellant's claim is meritless.[8] Appellant's rule-based claim is not even cognizable under the PCRA. "[T]o be eligible for PCRA relief, appellant must plead and prove by a preponderance of the evidence that his conviction resulted from [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Dukeman, 565 A.2d 1204, 1206 (Pa. Super. 1989) (citing 42 Pa. C.S.A. § 9543(a)(2)(ii)). Counsel's purported "ineffectiveness for failure to file a motion to dismiss due to a violation of Rule [600] has absolutely no effect on the

---

[8] Counsel stated in his *Finley* letter that he "assume[d] *arguendo*" that Appellant's claim "refer[red] to a motion to dismiss pursuant to Rule 600," as Appellant "ha[d] not provided any information regarding what particular motion to dismiss he contends should have been filed prior to trial despite a request from [PCRA] counsel."

11

'truth-determining' process." Id. Accordingly, Appellant's claim warrants "summar[y] dismiss[al] without a hearing and without ever reaching [its] merits." Id.[9]

Regarding trial counsel's alleged ineffectiveness for failing to file a pretrial motion to suppress physical evidence, PCRA counsel stated in his *Finley* letter that he requested Appellant to advise "what particular motion to suppress he contends should have been filed prior to trial," but that Appellant had "not provided any information" in response to counsel's request. Notwithstanding Appellant's failure to identify the scope of his claim, PCRA counsel "assume[d] *arguendo*" that Appellant was "referring to a motion to suppress the 40 caliber bullets recovered from his home pursuant to a search warrant." This Court agrees with counsel that any such motion would have been meritless.

Police officers obtained a warrant to search Appellant's residence for "[a]ny and all firearms and[/]or ballistic evidence" relating to the shooting. Detective Brian Kelly's affidavit of probable cause submitted in support of the warrant had stated:

> On 2-3-08 at 2am, the complainant [Mr. Carrion] was working as the manager of the Platinum Club…. [T]he complainant observed an altercation between 2 groups of males and females … [and] took action to have the parties ejected from the club. While escorting the groups from the club, the complainant was approached by [Appellant] …. Appellant began screaming at the complainant demanding a refund. Security personnel assisted the complainant in removing [Appellant] from the premises. The complainant then returned to his duties inside the club. At appx. 2:15am … the complainant escorted a customer out the front door of the club at which time he observed [Appellant] standing in front of the premises, screaming 'I'll light this place up, you punk ass pussy'. The complainant then locked the door from inside the club and turned to go back into [the] premises when he heard 3 gunshots. The complainant felt a burning sensation in his upper back and discovered he had been shot….
>
> On the same date, off duty P/O Erica Coss … was inside the club attending a birthday celebration for her cousin…. Coss related that she observed the confrontation inside the

---

[9] Appellant's claim would fail on its merits in any event. Plaintiff was arrested on February 18, 2008, two weeks after the shooting incident. As noted in counsel's *Finley* letter, the docket reflects (a) that between September 2008 and the commencement of trial on September 21, 2009, multiple continuances were granted because of the unavailability of *defense counsel*, and (b) that 365 days of *non-excludable* time therefore had not accrued by the time of trial.

12

club and that a few moments after ... [Appellant was] ejected from the club, she (Coss) left the club. She related that once outside the club, she observed [Appellant] standing in the street in front of the club. She stated that she heard [Appellant] yelling at someone at the front of the club and that she kept walking towards her vehicle. She stated that as she walked, she heard 3 gunshots coming from where [Appellant] was standing. She related that there were no other persons standing where [Appellant] was standing. She related that she took cover and that when she emerged, [Appellant] was gone.

The scene was processed ... and recovered from the street in front of the Platinum Club ... were [three] 40 caliber S&W spent casings.

P/O Coss was shown a photo array of 8-like photos and positively identified [Appellant] as the same person ... standing in front of the Platinum Club when the complainant was shot.

Records check on [Appellant] shows residence as 5014 Master St. Real Estate files checked with owner of 5014 Master St. as [Appellant].

"The standard for evaluating whether probable cause exists for the issuance of a search warrant is the totality of circumstances[.]" Commonwealth v. Jones, 542 Pa. 418, 424 (1995) (citations omitted here). "A magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband of a crime will be found in a particular place." Id. "The information offered to establish probable cause must be viewed in a common sense, nontechnical manner and deference must be accorded to the issuing magistrate." Id. "The duty of a court reviewing the decision is to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id.

Detective Kelly's affidavit supported that Appellant shot Mr. Carrion, and that Appellant owned and lived at the residence which the police sought to search. It is reasonable to conclude there was "a fair probability" that a firearm and/or ballistics evidence relating to the shooting would be found where the shooter resided. Furthermore, this Court agrees with PCRA counsel

13

that even if the hypothesized motion had any merit and justified exclusion of the bullets, the remaining evidence *easily* sustained Appellant's convictions.[10]

**2.    Whether trial counsel was ineffective for failing to file a motion to modify bail pursuant to Pa. R. Crim. P. 529.**

Contrary to Appellant's representations, his trial counsel filed motions to modify bail before his preliminary hearing and before trial, and Appellant's claim of error therefore is meritless.  Moreover, "to be eligible for PCRA relief, appellant must plead and prove by a preponderance of the evidence that his conviction resulted from [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Dukeman, 565 A.2d 1204, 1206 (citing 42 Pa. C.S.A. § 9543(a)(2)(ii)).  There is zero evidence that any failure to obtain further bail modifications – for a defendant charged with attempted murder -- "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Quoting Dukeman supra.

**3.    Whether trial counsel was ineffective for failing to investigate "key witnesses."**

PCRA counsel advised in his *Finley* letter that

[Appellant] has not provided any information regarding the identity of any of the 'key' fact witnesses that trial counsel failed to interview and call at trial.  A request from undersigned counsel for this precise information has not garnered a response from petitioner.  Accordingly, based on the Petition and available record, undersigned counsel has been unable to independently identify any witness who was willing to testify for the

---

[10] As counsel noted, the remaining evidence "would still: Place [Appellant] at the scene of the shooting; Establish that [Appellant] was screaming at Mr. Carrion immediately before the shooting; Establish that [Appellant] was threatening to 'light up' the club immediately before the shooting; Establish that [Appellant] left immediately after the shooting; Indicate that Mr. Carrion was shot with a 40 caliber firearm; Establish, by stipulation, that [Appellant] purchased two 40 caliber firearms before the shooting; and Establish, by stipulation, that [Appellant] did not have a license to carry a firearm."

14

defense. In addition, the Petition and record do not establish that such a witness (1) existed, (2) was available to testify for the defense in September of 2009, and (3) was known to trial counsel.

"To establish counsel was ineffective for failing to call a witness, appellant must show: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied appellant a fair trial." Commonwealth v. Thomas, 615 Pa. 477, 496 (Pa. 2012). "[T]rial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense." Commonwealth v. Michaud, 70 A.3d 862, 868 (2013).

Because Appellant fails to establish *any* prong of the applicable standard, his claim of error is meritless.

**4. Whether trial counsel was ineffective "for failure to object to prosecutor['s] misleading prejudicial remarks in closing arguments."**

Appellant fails to identify a single remark of the Commonwealth that purportedly was improper, let alone does he establish that trial counsel's failure to object to such remark had "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Appellant's claim of error therefore is meritless.

**5. Whether trial counsel was ineffective for failing to file a pretrial motion asserting a "speedy trial violation" pursuant to Pa. R. Crim. P. 600.**

This issue is addressed above and is meritless.

15

6.      Whether appellate counsel was ineffective for "not articulating the challenge to the sufficiency of evidence explaining that the commonwealth had not established any of the specific elements of the offenses charged to petitioner beyond a reasonable doubt."

A direct appeal alleging there was insufficient evidence to support the "specific elements of the offenses charged" would have been meritless, and Appellant's claim that his counsel was ineffective for failing to raise this issue is, therefore, equally meritless.

A person may be convicted of attempted murder if he takes a "substantial step towards an intentional killing" with a "specific intent to kill." Commonwealth v. Anderson, 538 Pa. 574, 582 (Pa. 1994) (citing 18 Pa. C.S.A. §§ 901(a) and 2502(a)). "A person may be convicted of aggravated assault ... if he 'attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.'" Commonwealth v. Matthew, 589 Pa. 487, 491 (2006) (quoting 18 Pa. C.S. § 2702(a)(1)). A person may be convicted of possessing an instrument of crime if he "possessed an instrument that is commonly used for criminal purposes, under circumstances not manifestly appropriate for lawful use, with the intent to employ it criminally." Commonwealth v. Foster, 651 A.2d 163, 165 (Pa. Super. 1994). A person may be convicted of carrying a firearm without a license with evidence establishing (a) that he carried a firearm, (b) "that the firearm was unlicensed, and (c) that where the firearm was concealed on or about his person, it was outside his home or place of business." Commonwealth v. Parker, 847 A.2d 745, 750 (Pa. Super. 2004).

Viewed in a light most favorable to the Commonwealth,[11] the evidence established that an angered Appellant had a verbal altercation with the victim and then shot him in the back, and

---

[11] "The standard ... when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

16

that Appellant lacked a valid license to carry a firearm. This evidence sustains a finding of each element of the above-referenced crimes. Moreover, to the extent Appellant claims the evidence was insufficient to establish that he actually was the shooter, the Superior Court specifically addressed this issue on direct appeal and held:

> Instantly, the jury was free to believe the Commonwealth's evidence.... Mr. Carrion testified that he saw Appellant and his friends walking on Torresdale Avenue as he was escorting his friend out of the bar. He stated that after Appellant saw him through the glass doors of the club, he turned away from his friends and walked toward the door, again screaming at Mr. Carrion. Appellant was alone screaming obscenities. Mr. Carrion turned away from Appellant and heard three pops as he locked the front door. He identified Appellant in a photo array and gave a statement to Detective Kelly. He stated that Appellant was the person who screamed obscenities and threats seconds before he was shot.

> Officer Coss also testified that she saw Appellant yelling at someone inside the bar. She also stated that she passed Appellant and heard three consecutive gun shots. She identified Appellant as the person she saw shouting obscenities outside the club just seconds before Mr. Carrion was shot. The jury was free to believe all, some, or none of the witnesses' testimony. [citations omitted here].

> The trial court found: 'Viewed in a light most favorable to the Commonwealth, the above evidence and testimony support a finding that Appellant stood outside the front door of the Platinum Club and shot the victim in the back ....' Trial ct. Op. at 10. We Agree.

McCoy, 3632 EDA 2009, pgs. 10-11.

---

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Gibbs, 981 A.2d 274, 280-281 (citations omitted here). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Id. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Id. "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Id. "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Id. "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." Id.

**7. Whether appellate counsel was ineffective "for failing to ask for reconsideration of [Appellant's] sentence, or correcting [Appellant's] sentence and time credited."**

Each of Appellant's sentences – *i.e.*, the 15 to 30 years' incarceration for attempted murder, the 3½ to 7 years' incarceration for violating the Uniform Firearms Act (concurrent), and the 2½ to 5 years' incarceration for possessing an instrument of a crime (concurrent) – was within Pennsylvania's statutory limits and guideline ranges. Consequently, any challenge to Appellant's sentences on direct appeal could only have concerned this Court's exercise of discretion.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa. Super. 2015) (citations omitted here). "In this context, an abuse of discretion is not shown merely by an error in judgment." Id. "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Id. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." Commonwealth v. Perry, 612 Pa. 557, 565 (2011). "In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." Commonwealth v. Andrews, 720 A.2d 764, 768 (Pa. Super. 1998).

18

"Where pre-sentence reports exist," appellate courts "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Devers, 519 Pa. 88, 101-102 (1988). "A pre-sentence report constitutes the record and speaks for itself." Id. at 102. "[S]entencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure." Id. "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." Id. "This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there [courts] will presume also that the weighing process took place in a meaningful fashion." Id.; see also Commonwealth v. Best, 120 A.3d 329, 348-349 (Pa. Super. 2015) (quoting Devers, supra).

This Court conducted a hearing and closely considered the presentence report, Appellant's criminal history, the precise circumstances of this case, Appellant's reprehensible and dangerous conduct, Appellant's testimony at sentencing, and Appellant's personal circumstances. (N.T., 11/13/09). Upon consideration of the above factors, this Court imposed an aggregate sentence of 15 to 30 years' incarceration on the verdicts arising out of Appellant's shooting of someone in the back. There is zero indication that this Court "exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision," and any appeal challenging this Court's exercise of discretion in sentencing would have been frivolous.

**8.    Whether appellate counsel was ineffective "for not correcting or arguing [Appellant's] pro se motion" on direct appeal.**

The Superior Court docket indicates that Appellant filed a *pro se* motion on direct appeal on March 25, 2011, and that on April 13, 2011, the motion was denied "without prejudice to the Appellant's right to re-apply for the requested relief via counsel."[12]  Appellant now claims that his counsel on direct appeal was ineffective "for not correcting or arguing petitioners pro se motion, [s]howing numerous violations of rules of criminal procedure and procedural due process rights of petitioner."  However, in neither his PCRA Petition nor in his 1925(b) Statement does Appellant identify a specific rule or due process right that his counsel failed to raise – *i.e.*, a right or claim that is *in addition to* or distinct from those already addressed above in reference to Appellant's other claims.  Because Appellant's above-referenced claims invoking specific rules of procedure and due process rights are meritless for the reasons already set forth, his counsel on direct appeal could not have been ineffective for failing to raise them.

**9-10.  Whether PCRA counsel rendered ineffective assistance.**

Appellant alleges his PCRA counsel failed to pursue and develop the claims raised in his PCRA Petition.  As noted, Appellant specifically asserts:

9.    Ineffective 'retained' PCRA counsel['s] … failure to notify the court appellant had retained counsel by entering his appearance as counsel of record, failure to amend PCRA denying appellant meaningful review of additional issues of merit such as:

    A)    Ineffective trial counsel, counsel's prejudicial statement in closing denied appellant meaningful adversarial testing, denying appellant of guaranteed 6th amend[ment] right to effective assistance of counsel role of an advocate. (Anders v. California, 87 S. Ct. 1396).  In line with (U.S. v. Cronic 104 S. Ct. 2039) Cronic (466 U.S 648).

---

[12] Counsel's *Finley* letter erroneously states that the Superior Court docket does not "reflect[] the filing of a *pro se* motion."

10.   Ineffective 'court appointed' PCRA counsel, counsel's failure to raise underlying issues denying Pro-Se appellant meaningful review in line with (Com v Mostellar, 633 A.2d 615).

"Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney." Commonwealth v. Rykard, 55 A.3d 1177, 1190 (Pa. Super. 2012) (citations omitted here). "Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim." Id. "[T]he critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. ... If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." Id.

Because Appellant's myriad claims of ineffectiveness against his trial and direct appeal counsel are meritless for the reasons already set forth, his layered claims of ineffectiveness against PCRA counsel also are meritless.[13]

**CONCLUSION**

For the reasons set forth in the foregoing Opinion, this Court's Order dismissing Appellant's PCRA Petition should be affirmed.

BY THE COURT:

DATE: 4/29/16

SUSAN I. SCHULMAN, J.

---

[13] Appellant lastly complains that this Court abused its discretion by declining to conduct an evidentiary hearing pertaining to his PCRA Petition. "A PCRA court is only required to hold a hearing where the petition, or the Commonwealth's answer, raises an issue of material fact." Commonwealth v. Eichinger, 108 A.3d 821, 849 (Pa. 2014). "If a PCRA petitioner's offer of proof is insufficient to establish a *prima facie* case, or his allegations are refuted by the existing record, an evidentiary hearing is unwarranted." Id. As shown above, all of Appellant's claims either are refuted by the existing record or are unaccompanied by an offer of proof sufficient to establish a *prima facie* case. In such circumstances, an evidentiary hearing was unwarranted.

21