32 A.3d 232

COMMONWEALTH of Pennsylvania, Appellant

v.

Shawney PERRY, Appellee.

Supreme Court of Pennsylvania.

Submitted Oct. 13, 2010.

Decided Nov. 23, 2011.

558

Hugh J. Burns, Jr., Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

Gerald A. Stein, Law Offices of Gerald A. Stein, P.C., Philadelphia, for Shawney Perry.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice TODD.

In this discretionary appeal, we consider whether the Superior Court, in vacating the sentence imposed upon Appellee Shawney Perry for carrying a loaded firearm without a license in violation of the Uniform Firearms Act ("UFA"), specifically, 18 Pa.C.S.A. § 6106(a),[1] misapplied this Court's directives, as

---

1. Perry was convicted under the 1995 version of the Act, which provided:

> any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully

set forth in *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007), concerning appellate review of sentences. For the reasons set forth below, we hold the Superior Court failed to give sufficient deference to the sentencing court's imposition of sentence. Accordingly, we vacate the Superior Court's order and remand the matter to the Superior Court for a reexamination of Perry's judgment of sentence consistent with this opinion and with our decision in *Walls*.

The relevant facts were previously summarized by this Court [2] as follows:

> On Saturday June 8, 1996, at approximately 3:00 a.m., Javon Jones and Bobby Mahalati were driving a GEO Tracker to Illusions, an after-hours club. At the same time, Appellant Perry was driving a white Lexus and [Brett Stewart] was a passenger in the vehicle. Perry had stopped the Lexus at a green light on 7th Street which was around the corner from the club. Perry and Stewart were blocking a lane of traffic while the men conversed with some women who were in the car behind them. Jones, driving the Tracker with the top and windows down, pulled along side the Lexus as the light turned red. Stewart turned to Jones and remarked, "What the f– you looking at?" Jones and Mahalati ignored Stewart. When the light turned green, Jones drove around the Lexus and stopped in front of the entrance to Illusions. Perry pulled the Lexus along the passenger side of the Tracker. Perry asked Mahalati, "What the f—— you looking at?" Perry then repeated several times, "What do you want to do? Do you want to f—— us?" Mahalati responded, "All right, What ever p——." One or both of the Appellants

issued license under this chapter commits a felony of the third degree.
18 Pa.C.S.A. § 6106(a) (1995). Section 6106 was last amended on April 22, 1997.

**2.** Prior to trial, Perry filed a motion to suppress evidence discovered during a warrantless search of the vehicle he was driving. The trial court granted the motion, and the Commonwealth appealed. The Superior Court reversed the trial court's order granting suppression, and Perry filed a petition for allowance of appeal with this Court, which was granted. Ultimately, this Court affirmed the Superior Court's decision.

shouted, "What? Do you want to take care of this" and "We can take care of this around the corner." Perry and Stewart then drove to the end of the block and turned left onto 8th Street.

Perry positioned the Lexus on 8th Street so as to leave only enough room for a single vehicle to pass. Jones and Mahalati drove past the Lexus, passing it on the right. Jones and Mahalati observed that both Perry and Stewart were holding guns. Mahalati threw his seat back in an attempt to protect himself while Jones attempted to speed away. Shots rang out and Mahalati lost feeling in his legs. Jones drove around the block in an effort to seek help. Jones flagged down Philadelphia Police Officer Tyrone Forrest, who was on duty outside of Illusions. Officer Forrest observed the bullet hole in the side of the Tracker and noted blood on the seat. After summoning an ambulance, Officer Forrest broadcasted an alert over police radio at 2:59 a.m., stating that a man had been shot and that his assailants were two black males who had driven southbound on 8th Street in a two-door white Lexus.

*Commonwealth v. Perry*, 568 Pa. 499, 500–01, 798 A.2d 697, 697–98 (2002) (editorial omissions original).

A few minutes after the broadcast alert, police officers observed Perry and Stewart in the white Lexus, pursued them, and stopped the vehicle. Jones was taken by police to the location of the stop, at which time he identified Perry and Stewart as the two men with whom he and Mahalati had engaged in a confrontation. During a search of the vehicle, police officers uncovered a 9mm Helwan handgun containing six bullets under the driver-side floor mat, and a .22 Beretta under the passenger-side floor mat.

Ultimately, Perry and Stewart were arrested and charged with two counts of attempted murder,[3] two counts of aggravated assault,[4] criminal conspiracy,[5] and various UFA violations.

3.  18 Pa.C.S.A. § 901.
4.  18 Pa.C.S.A. § 2702.
5.  18 Pa.C.S.A. § 903.

Following a joint trial, Perry was convicted by a jury of one count of aggravated assault and one UFA violation for carrying a firearm without a license. Stewart was acquitted of all charges.

On November 18, 2004, Perry was sentenced to 10 to 20 years for his aggravated assault conviction and a consecutive term of 2½ to 5 years for his UFA conviction; both sentences represented the maximum term of imprisonment for those offenses.[6] At Perry's sentencing hearing, the sentencing court focused on the harm inflicted on the victim and the lack of mitigation evidence, stating:

> Of course, the Court knows what the guidelines are. I asked counsel about that before and I was told it was 54 to 72 plus or minus twelve.[7] ... And I know that [my sentence is] outside the guidelines and it's quite a bit outside the guidelines and it should be, in my opinion, in

6. See 18 Pa.C.S.A. § 1103(1) (maximum term of imprisonment for a felony of the first degree is 20 years); 18 Pa.C.S.A. § 1104(1) (maximum term of imprisonment for a misdemeanor of the first degree is 5 years).

7. At the sentencing hearing, the Commonwealth advised the court that the applicable sentencing guideline range for Perry's conviction for aggravated assault with a deadly weapon, which had an offense gravity score of 11, was 54 to 72 months, plus or minus 12 months. Although this is the correct range under the *fifth* edition of the Sentencing Guidelines, because Perry committed his offense on June 8, 1996, his sentence was controlled by the fourth edition of the sentencing guidelines, which was in effect from August 12, 1994 through June 13, 1997. See, e.g., Commonwealth v. Maneval, 455 Pa.Super. 483, 688 A.2d 1198, 1200 (1997) (applicable sentencing guidelines are those in effect at the time offense was committed). Nevertheless, no party raised this issue, either before the lower courts or before this Court. We also note the sentencing court did not specifically state on the record the guideline range for Perry's UFA conviction. A sentencing court is not required to recite on the record the guideline sentencing range, as long as the record demonstrates the court's recognition of the applicable sentencing range and the deviation of sentence from that range. Commonwealth v. Twitty, 876 A.2d 433, 438 (Pa.Super.2005). In that regard, Perry now argues that "neither the certified record nor the sentencing court opinion indicates that the sentencing court was aware of the precise guidelines sentence for [his UFA] conviction." Appellee's Brief at 8. However, Perry failed to raise this issue in his motion for reconsideration of sentence, or on appeal to the Superior Court. Accordingly, this claim is waived. Pa.R.A.P. 302(a).

light of the damage done to this gentleman. And the jury heard all the evidence. They heard the evidence about the so-called self-defense; they rejected that. They also heard the evidence of good character. Many people came in and testified about Mr. Perry's good character. He is a good guy like a lot of people that are good guys and end up at one time or another doing bad things, and when they do bad things they have to account for them.

But I am taking this into account. I think that this man is paralyzed from, not the [waist] down, but from the chest down, as a result of one shot fired by Mr. Perry. He admitted he fired the shot. I see no mitigation anywhere from the people that testified and from Mr. Perry's testimony himself, and the jury didn't see anything, that's why they found him guilty of the aggravated assault.

N.T. Sentencing Hearing, 11/18/04, at 52–54. The sentencing court denied Perry's subsequent motion for reconsideration of sentence.

■ Thereafter, Perry appealed to the Superior Court, alleging, *inter alia,* that the sentencing court erred in sentencing him "outside of the guidelines solely on the basis of the serious injury to the [victim] and in disregard of all of the defense evidence regarding defendant's excellent character, reputation, work history, prior victimization and lack of criminal record and the rehabilitative needs of the defendant." [8] Statement of Matters Complained of on Appeal, 4/20/05, at 2. Thereafter, the Superior Court, in an unpublished memorandum opinion, affirmed Perry's sentence for aggravated assault, but vacated his judgment of sentence on the UFA conviction and remanded for resentencing, concluding the imposition of a consecutive maximum sentence for the UFA conviction was unreasonable and an abuse of discretion. *Commonwealth v. Perry,* 228 EDA 2005, 947 A.2d 831 (Pa.Super. filed Jan. 7,

**8.** As this issue was a challenge to the discretionary aspects of his sentence, Perry did not have an absolute right to appellate review, and his challenge in this regard was properly viewed as a petition for allowance of appeal. *See* 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 510, 522 A.2d 17, 18 (1987).

2008).[9]  Judge Mary Jane Bowes dissented; she opined that the majority failed to apply the proper standard of review as set forth in 42 Pa.C.S.A. § 9781(c)(3).  Noting that, pursuant to this Court's decision in *Walls, supra,* sentencing courts have discretion to sentence outside the guidelines based on relevant factors not specifically contemplated by criminal statutes, Judge Bowes concluded "as long as the record reflects that the trial court imposed an individualized sentence that was not unreasonable in light of the factors articulated in 42 Pa.C.S. § 9781(d), we must affirm." *Perry,* 228 EDA 2005, dissenting opinion at 6.

The Commonwealth filed a petition for allowance of appeal, and, on May 4, 2010, this Court granted review, limited to the issue of whether the Superior Court, in vacating Perry's sentence for his UFA conviction, failed to apply the proper standard of review as set forth in *Walls.*[10]  As this issue presents a question of law, our scope of review is plenary and our standard of review is *de novo. Commonwealth v. Chase,* 599 Pa. 80, 88, 960 A.2d 108, 112 (2008).

It is well settled that "the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion." *Walls,* 592 Pa. at 564, 926 A.2d at 961.  An abuse of discretion "is more than a

9.  Initially, the Superior Court issued a published opinion wherein it concluded all of Perry's issues were waived.  Perry filed a motion for reconsideration, the Commonwealth conceded the court's finding of waiver was erroneous, and the Superior Court ultimately withdrew its opinion.  The Superior Court also vacated an award of restitution to the victim.  That portion of the Superior Court's opinion, however, is not before us.

10.  As noted above, Perry's challenge before the Superior Court was to the discretionary aspects of his sentence.  *See supra* note 8. Subsection (f) of 42 Pa.C.S.A. § 9781 provides "No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals."  42 Pa.C.S.A. § 9781(f). Thus, pursuant to subsection (f), this Court is precluded from reviewing Perry's challenge to the discretionary aspects of his sentence.  Nevertheless, subsection (f) does not preclude this Court's review of the application of legal principles, including the issue of whether a lower court exceeded its standard of review in supplanting the sentencing court's discretion.  *See Commonwealth v. Smith,* 543 Pa. 566, 570, 673 A.2d 893, 895 (1996).

mere error of judgment; thus, a sentencing court will not have abused its discretion unless 'the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.' " *Id.* (citation omitted). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. *Id.* Indeed, as we explained in *Walls,* there are significant policy reasons underpinning this deferential standard of review:

> The rationale behind such broad discretion and the con-comitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

*Id.* at 565, 926 A.2d at 961–62 (citations and footnote omitted).

Further, Section 9781 of the Sentencing Code sets forth an appellate court's statutory obligations in reviewing a sentence. Subsection (c) provides:

**(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines, but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the

application of the guidelines would be clearly unreasonable or

(3) *the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.*

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c) (emphasis added). Thus, the appellate court must specifically review a sentence outside the guidelines for reasonableness.

Subsection (d) sets forth the factors to be considered in determining whether a sentence outside of the guidelines is unreasonable:

**(d) Review of record.**—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

As noted above, the Superior Court affirmed Perry's judgment of sentence for his aggravated assault conviction. In doing so, the court reasoned that, because "there is a wide spectrum of conduct that can satisfy the elements of aggravated assault, some far more serious than others, . . . the [sentencing] court was certainly justified in considering the individual facts of the present case to determine where on that spectrum the present case fell when imposing sentence." *Perry*, 228 EDA 2005, at 23. Specifically, the Superior Court noted the assault inflicted life threatening injuries, and that "but for fortuity, the victim could have suffered a mortal wound and [Perry] could have . . . been facing a conviction for third-degree murder. In terms of [Perry's] actions, there is no real difference except for the outcome." *Id.* at 24.

However, with regard to the judgment of sentence for Perry's UFA conviction, the Superior Court held "the same rationale does not analytically support a maximum sentence." *Id.* at 25. The court opined:

Unlike the crime of aggravated assault, carrying a firearm without a license contemplates a relatively limited range of conduct, that being, of course, carrying a weapon without a license. The purpose for which the weapon was carried is not an element of the offense and, as such, is not, logically speaking, a relevant consideration in imposing sentence. That is, had the vehicle [Perry] was occupying been stopped for a routine traffic offense and had [Perry] been found in the possession of the weapon, he would have been just as guilty as he was under the facts found here. In the same vein, the result of carrying a weapon is also irrelevant as that result is dealt with by imposition of a sentence on another crime when the result of carrying the firearm itself is a criminal act. Here, the net effect of [Perry's] decision to carry a firearm was the commission of an aggravated assault for which [Perry] will now pay the maximum possible punishment.

*Id.* at 25–26.

The Superior Court reasoned that, "even if intent in carrying the weapon was a legitimate factor, there is no evidence that [Perry] carried a weapon with the intent to shoot someone on that night or to employ the weapon criminally," stating:

Rather, in an unfortunate commentary on the state of our society, it appears that too many young individuals believe that when they leave home in an urban environment it is necessary to carry a weapon. More poignantly, the facts of the present case demonstrate the danger of pervasive possession of weapons.

*Id.* at 26.

Finally, the Superior Court concluded:

From all indications, here, the imposition of a maximum sentence for carrying a weapon without a license was simply a way of increasing [Perry's] punishment for the aggravated

assault conviction or, possibly, increasing [Perry's] punishment for the criminal episode viewed as a whole. Because [Perry] was "maxed out" on the aggravated assault charge, we believe this constitutes an abuse of discretion, and because the general rationale used to justify the sentence does not apply to this offense, we must deem the sentence imposed on this count as "unreasonable" as set forth in *Walls*.

*Id.* at 27–28.

The Commonwealth first argues the Superior Court erred in granting relief based on its analysis of the elements of Section 6106 because Perry did not argue on appeal that the sentencing court should have confined itself "to a mechanical review of the elements of [UFA]." Commonwealth's Brief at 14. Rather, the Commonwealth asserts Perry complained that his overall sentence was unduly harsh and that the sentencing court should have focused more on his rehabilitative needs and excellent character, instead of the severity of the victim's injuries. *Id.* The Commonwealth additionally contends the Superior Court's decision conflicts not only with this Court's holding in *Walls*, but with "decades of binding precedent" which requires that an appellate court have due regard for, *inter alia*, the "protection of the public" and the "gravity of the offense in relation to the impact on the victim and the community." *Id.* at 11, 15–16 (emphasis omitted). In this respect, the Commonwealth emphasizes Perry

illegally purchased **two** guns without a license and proceeded to transfer both of them in and out of **three** cars that he drove through a highly populated urban area over the course of several hours. Therefore, his [UFA] offense was exceptionally serious and would have merited an enhanced penalty, even if it were (improperly) viewed in total isolation from his other criminal conduct.

*Id.* at 16 (emphasis original).

Finally, the Commonwealth reiterates that a sentencing court is not bound by the sentencing guidelines, and that the trial court was permitted to impose its sentences consecutive-

ly. According to the Commonwealth, in vacating the sentence imposed by the sentencing court for Perry's UFA conviction, the Superior Court "impermissibly substituted its view for that of the trial judge concerning what constituted [a] suitable punishment." *Id.* at 19.

In response to the Commonwealth's arguments, Perry asserts the Commonwealth "impermissibly seeks to interpret *Walls* so as to provide 'near limitless discretion' for sentencing courts." Appellee's Brief at 13. Perry maintains the Superior Court's decision in the instant case did not conflict with this Court's decision in *Walls;* Perry points out that, unlike in *Walls,* the Superior Court in this case gave proper deference to the sentencing court's judgment and discretion, as evidenced by its affirmance of Perry's sentence on his conviction for aggravated assault. *Id.* at 22. Perry further avers the Superior Court properly considered the factors listed in Section 9781(d), and that "a careful review of the [Superior Court's] opinion reveals that the [Court] ... did not negate either intent or result as relevant [UFA] sentencing factors," but simply found there was "no evidence that [Perry] carried a weapon with the intent to shoot someone on that night or to employ the weapon criminally." *Id.* at 25–26 (emphasis omitted).

Perry further contends that, while not dispositive, the trial court's failure to specifically acknowledge on the record or in its written opinion the applicable sentencing guidelines for his UFA conviction militates against a finding that the sentence was reasonable. *Id.* at 15. Finally, Perry echoes the Superior Court's suggestion that his sentence was an attempt by the sentencing court to "rectify" the jury's failure to return a verdict of attempted murder, and Perry alleges that, in imposing a sentence in excess of the sentencing guidelines, the sentencing court essentially "nullified" the jury's decision to acquit him of attempted murder. *Id.* at 17.

After careful consideration, we find that, in vacating the sentencing court's judgment of sentence for Perry's UFA conviction, the Superior Court failed to adhere to the dictates of this Court's decision in *Walls.* In *Walls,* the defendant

sexually molested his seven-year-old granddaughter on several occasions when the child spent the night at her grandparents' house. Walls pled guilty to one count of rape of a victim under the age of thirteen; one count of involuntary deviate sexual intercourse ("IDSI") with a victim under the age of thirteen; and one count of incest. Walls was sentenced to consecutive terms of 10 to 20 years each for the rape and IDSI offenses, and a consecutive term of one to ten years on the incest offense. The mandatory minimum sentence for the rape and IDSI offenses was 5 years each, and the standard range sentence for each offense was 60 to 66 months, with an aggravated range sentence of 66 to 78 months; thus, Walls' sentences of 10 to 20 years for these offenses, which constituted the statutory maximum, was well outside the sentencing guidelines.[11]

Walls appealed his judgment of sentence. In its opinion written pursuant to Pa.R.A.P. 1925(a), the sentencing court offered the following reasons for its sentence: (1) Walls was in a position of trust and responsibility in caring for the victim; (2) the fact that the victim was only seven years old at the time of the sexual abuse; (3) the victim was Walls' granddaughter; and (4) Walls perceived his acts to be "accidents" as opposed to deliberate conduct. *Walls*, 592 Pa. at 562, 926 A.2d at 960.

The Superior Court vacated Walls' judgment of sentence. In doing so, the court first opined that a sentence should be based on the minimum length of confinement consistent with the gravity of the offense, the need for public protection, and the defendant's need for rehabilitation. *Commonwealth v. Walls*, 846 A.2d 152, 157–58 (Pa.Super.2004). The court further reasoned that, because the sentencing guidelines "were implemented to create greater consistency and rationality in sentencing," the creation of a "norm"—that is, a standard range of punishment—by which to measure the gravity of an offense "strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's

11. Walls' sentence for incest was within the standard range.

character or criminal history that [deviate] from the norm and must be regarded as not within the guidelines contemplation." *Id.* at 158. Applying its reasoning to the facts of the case, the Superior Court opined that the sentencing court in *Walls* "focused to an extreme end upon ... retribution/vengeance and protecting the public." *Id.* at 160. The court further posited that the fact that Walls held a position of trust and was responsible for caring for the victim was not uncommon in cases involving the sexual assault of children, and noted that the tender age of the victim was a factor contemplated in the crimes themselves. *Id.* at 161. Thus, the Superior Court concluded none of the factors cited by the sentencing court justified the imposition of the statutory maximum sentence. *Id.*

This Court granted the Commonwealth's petition for allowance of appeal, and ultimately reversed the Superior Court's decision, concluding the Superior Court exceeded its applicable standard of review. In so doing, we first emphasized the deferential standard of review an appellate court should employ when reviewing a judgment of sentence—abuse of discretion. Furthermore, and related thereto, we reiterated "the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." *Walls*, 592 Pa. at 570, 926 A.2d at 964–65. Additionally, to the extent the Superior Court in *Walls* suggested that a defendant must be sentenced to the minimum amount of confinement that is consistent with the protection of the public, gravity of the offense, and rehabilitative needs of the defendant, we rejected that position, noting that the phrase "minimum amount of confinement" had been deleted from the Sentencing Code in 1978. *Id.* at 571, 926 A.2d at 965.

Next, we reviewed the four factors set forth in Section 9781(d), and determined that the sentencing court properly considered the nature and circumstances of the offense, as

well as the history and characteristics of the defendant. *Id.* at 573, 926 A.2d at 967. Specifically, we noted the sentencing court properly relied on a number of additional findings in support of its upward departure from the sentencing guidelines, including the victim's age, Wall's position of trust and responsibility, the relationship between Walls and the victim, and Walls' characterization of the assaults as "accidents," and stated:

> we find that the sentencing court was permitted to rely on these factors to justify Walls' sentence. As noted by the Commonwealth and the Superior Court, the precise age of the victim, i.e., the fact that the victim was only seven-years-old at the time of the sexual abuse, was not an element of rape or IDSI of a victim less than thirteen years old and could justify an above-guideline sentence. While the Superior Court found that this factor could not justify the sentence in this case, in light of the deferential standard of review, we disagree. Additionally, we agree with the Commonwealth that Walls has offered no legitimate basis to presume that these factors, the victim being entrusted to Walls' care and was his granddaughter, are subsumed within the sentencing guidelines. Thus, we conclude that the findings upon which Walls' sentence was based were legally permissible.

*Id.* at 574, 926 A.2d at 967.

Finally, we pointed out that the sentencing court in *Walls* took into account the general standards for sentencing, in that it "clearly considered the protection of the public as well as the gravity of the offense as it relates to the impact on the life of the victim and the community. Furthermore, it is apparent that the sentencing court factored into its decision the rehabilitative needs or prospects of rehabilitation for Walls." *Id.* at 575, 926 A.2d at 967–68.

We conclude the Superior Court likewise exceeded its standard of review in the instant case. Initially, we note that, at the time of Perry's sentencing, the sentencing court indicated that it was aware of the guideline range for the offenses of which Perry was convicted. In addition, the sentencing court

stated at its hearing on Perry's post-trial motion that, prior to imposing Perry's sentence, it read and considered the pre-sentence report, which included Perry's employment history and evidence of his age and lack of a criminal record. N.T. Hearing, 1/4/05, at 10. The sentencing court also indicated that it took into account Perry's own testimony, and the testimony of his family and friends as character witnesses. *Id.* at 43. The sentencing court also considered the gravity of the offense, the fact that Perry was in possession of two firearms, the protection of the public, and Perry's need for rehabilitation, and refused to modify his sentence:

> I don't make it a habit of just throwing out numbers and giving people time in jail. And I hate to give people time in jail. I think of any way I can not to give it.
>
> *       *       *
>
> Mr. Mahalati, unless something happens, some miracle of science, is not going to get better. I took all of that into account. I took into account the prior record score of the defendant, but I also took into account the protection of the public. In these kind of things—and we have these things happen every day—people don't mean to shoot nobody. But then they come in after the damage is done and come to court and say, I didn't mean to do it. I'm sorry. I didn't think it was going to happen. When you have a gun, and you pull that trigger, and something comes out the front of that gun at 750 miles per hour and in the direction of somebody, it's going to hurt somebody. It's going to hurt somebody if it hits somebody.
>
> And that's what it did in this case. I took all of that into account. Maybe [Perry] doesn't have to be rehabilitated to the extent of some of the other people that sit in jail that have records, that have murders and robberies on them. But we know he has to be rehabilitated to some extent because we know he has to learn not to carry a gun, not to carry two guns, not to go shooting out in the middle of the street. That may hurt somebody.... [I]t's my recollection of the testimony that the bullet direction was from the back of the car toward the front. And there was testimony that

this car was moving away at the time, so he was trying to get away.

*Id.* at 40–41. Based on the above, it is clear that the sentencing court properly considered the nature and circumstances of the offense, including the gravity of the offense and the impact on the life of the victim; the protection of the public; and the history, characteristics, and rehabilitative needs of Perry, in imposing its sentence.

Nevertheless, the Superior Court concluded the sentence imposed for Perry's UFA conviction was unreasonable because, in imposing its sentence, the sentencing court improperly considered (1) Perry's intent in carrying the weapons; and (2) the severity of the injuries to the victim. First, the Superior Court failed to provide any legal support for its conclusion that, because Section 6106 of the Crimes Code prohibits the "relatively limited range of conduct" of carrying a firearm without a license, the purpose for which the weapon was carried and the result of the crime, neither of which is an element of the offense, are irrelevant to determining the appropriate sentence. Indeed, such a conclusion is inconsistent with our holding in *Walls,* wherein we held that factors that are not specific elements of an offense may be considered by the sentencing court in imposing its sentence.[12] Specifically, in *Walls,* we held that the sentencing court properly considered the fact that the victim was only seven years old and the relationship between the victim and the defendant in imposing its sentence, even though these factors were not specific elements of the offenses charged.

Further, to the extent the Superior Court suggested that the sentencing court imposed the maximum sentence for Perry's UFA offense as a way of increasing the punishment for

12. We recognize the Superior Court opined that, even if intent was relevant, there was no evidence to indicate Perry carried a weapon with the intent to employ it criminally. However, this alternative holding by the court, supported only by its brief theory on "the state of our society," *Perry,* 228 EDA 2005, at 26, as opposed to citations to the record, does not, in our view, render harmless the Superior Court's failure to give sufficient deference to the sentencing court's imposition of sentence.

his aggravated assault conviction, or for the criminal episode as a whole, this is mere conjecture by the Superior Court, unsupported by any reference to the record.

For all of these reasons, we find the Superior Court failed to give proper deference to the sentencing court when it determined that the sentencing court's imposition of a sentence, although outside of the sentencing guidelines, was unreasonable. Accordingly, we vacate the Superior Court's order and remand the matter to the Superior Court for a reexamination of Perry's judgment of sentence consistent with this opinion and with our decision in *Walls, supra.*

Chief Justice CASTILLE, Justices EAKIN, BAER, McCAFFERY, and ORIE MELVIN join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

The General Assembly has tasked our Superior Court colleagues with finally reviewing the discretionary aspects of sentences and, in doing so, has sharply limited this Court's jurisdiction in the field. *See* 42 Pa.C.S. § 9781(f). While I supported a limited prerogative correction in *Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957 (2007), I do not see that further intervention is called for at this time. Rather, I am satisfied that the Superior Court is performing its assigned role in this area of its expertise within the appropriate legal constraints.