J-S40042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
FARUQ BEY :
:
Appellant : No. 2966 EDA 2016

Appeal from the Judgment of Sentence May 11, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006412-2015

BEFORE: OTT, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.: **FILED JULY 25, 2017**

Faruq Bey appeals from the judgment of sentence imposed on May 11, 2016, in the Court of Common Pleas of Bucks County, after he pleaded guilty to aggravated assault, terroristic threats, simple assault, and possession of drug paraphernalia.[1] The trial court sentenced Bey to nine to 20 years' imprisonment on the aggravated assault charge, and imposed no further penalty on the remaining charges. The sole issue raised in this appeal is a challenge to the discretionary aspects of the sentence. Based upon the following, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2601(a)(1), 2701(a)(1), and 35 P.S. § 780-113(a)(32), respectively.

The trial court has provided the following factual and procedural history:

On August 5, 2015, Bensalem Township Police Officer Robert Schwarting responded to the Lincoln Motel in Bensalem Township for the report of an assault. Upon arriving on scene, Officer Schwarting observed Kishor Mehta, a sixty-three year old man, whose face was covered in blood and right eye was swollen shut.

Mr. Mehta and [Bey's] girlfriend, Natasha Steele, were co-workers at the Lincoln Motel in Bensalem Township. Ms. Steele had previously shared with [Bey] that Mr. Mehta had made her feel uncomfortable at times. [Bey] went to the Lincoln Motel on the night of August 5, 2015 to have "a man to man talk" with Mr. Mehta. [Bey] became upset by something Mr. Mehta allegedly said to Ms. Steele. [Bey] then repeatedly struck Mr. Mehta over the course of a ten to fifteen minute period. [Bey] was still present in the lobby of the motel upon Officer Schwarting's arrival. [Bey] was thereafter arrested and taken into custody. On February 17, 2016, [Bey] pled guilty to [a]ggravated [a]ssault[, terroristic threats, simple assault, and possession of drug paraphernalia]. Sentencing was deferred until May 11, 2016.

At [Bey's] sentencing, the Commonwealth presented Mr. Mehta's victim impact statement and a video from the night of August 5, 2015 that captured the assault.[2] Additionally, the Commonwealth described [Bey's] prior criminal history for the Court to consider when imposing a sentence.

[Bey] offered a report prepared by Dr. Allan [T]epper, a psychologist, that states that [Bey] had untreated psychological issues stemming from physical and sexual abuse he experienced throughout his life. Ms. Steele also testified on behalf of [Bey] and stated that she believes [Bey] is not a violent man.

_____

[2] The video of the assault is included in the certified record.

[Bey] was ultimately sentenced to nine to twenty years of incarceration in a state correctional institution. On May 17, 2016, [Bey] filed a Motion for Reconsideration of Sentence and a hearing was held on August 31, 2016. Following the hearing, this Court denied Bey's Motion. On September 21, 2016, [Bey] filed a Notice of Appeal to the Superior Court.

On October 18, 2016, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), [Bey] filed his Concise Statement of Matters Complained of on Appeal[.]

Trial Court Opinion, 11/28/2016, at 1–2 (unnumbered) (record citations and footnote omitted).

Bey contends the trial court's sentence of nine to 20 years' imprisonment — which is outside the sentencing guidelines[3] — was excessive because the trial court "failed to take into account [Bey's] troubled background and psychological history, his guilty plea and rehabilitative needs, and placed undue emphasis on the nature of the crime." Bey's Brief at 7. Bey maintains the trial court failed to comply with 42 Pa.C.S. § 9721(b), which provides that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." **See** Bey's Brief, at 6.

---

[3] The sentencing guideline recommendation for Bey's aggravated assault crime was 60 months in the mitigated range, 72 to 90 months in the standard range, and 102 months in the aggravated range. **See** N.T., 5/11/2016, at 2.

It is well-established that "[a] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

Here, Bey complied with the procedural requirements for this appeal by filing a timely motion for reconsideration of sentence and timely notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to Pa.R.A.P. 2119(f). The fourth part of our analysis focuses on whether there is a substantial question justifying our review. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Moury, supra*, 992 A.2d at 170 (citation and quotations omitted).

- 4 -

In the present case, Bey asserts:

[A] substantial question arises in that the Lower Court did not comply with the sentencing code, in that the Court imposed such a manifestly excessive sentence resulting in too severe a punishment under all the circumstances, particularly when considering that [Bey] pled guilty and had a troubled background and psychological history. A substantial question arises as the Lower Court relied primarily on the nature of the crime. All of these factors are contrary to the fundamental norms underlying the sentencing process, i.e., the rehabilitative needs of the defendant, and protection of the public[.]

Bey's Brief at 7 (Pa.R.A.P. 2119(f) statement) (citations omitted).

"This Court has held that an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question." *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (quotations and citations omitted). Furthermore, "an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (citation and quotations omitted). Therefore, we will proceed to review the merits of Bey's discretionary sentencing challenge.

The principles that guide our review of Bey's sentence of 9-to-20 years' imprisonment, outside the guidelines, are as follows:

It is well settled that "the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion." **[*Commonwealth v.*] Walls**, 592 Pa. [557,] 564, 926 A.2d [957,] 961 [2007]. An abuse of discretion "is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless 'the record discloses that the judgment exercised was

- 5 -

manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.'" **Id.** (citation omitted). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. **Id.** Indeed, as we explained in **Walls**, there are significant policy reasons underpinning this deferential standard of review:

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

**Id.** at 565, 926 A.2d at 961-62 (citations and footnote omitted).

Further, Section 9781 of the Sentencing Code sets forth an appellate court's statutory obligations in reviewing a sentence. Subsection (c) provides:

> **(c) Determination on appeal.-**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines, but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable or

(3) *the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.*

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c) (emphasis added). Thus, the appellate court must specifically review a sentence outside the guidelines for reasonableness.

Subsection (d) sets forth the factors to be considered in determining whether a sentence outside of the guidelines is unreasonable:

**(d) Review of record.-**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

*Commonwealth v. Perry*, 32 A.3d 232, 236-37 (Pa. 2011).

*In Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007), the Pennsylvania Supreme Court "decline[d] to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines…." *Id.* at 964. The *Walls* Court noted that the term "unreasonable" generally means a decision that is either irrational or not guided by sound judgment. *Id.* at 963. The Supreme Court held that a sentence can be defined as unreasonable either upon review of the four

elements contained in 42 Pa.C.S. § 9781(d) or if the sentencing court failed to take into account the factors outlined in Section 9721(b). ***Walls***, 926 A.2d at 964.

Here, the trial court, aware of the relevant sentencing guidelines,[4] justified its sentence, stating:

> [H]aving read this matter, heard the testimony, read the reports of Dr. Tepper, heard the testimony of the girlfriend, seen the photographs and video, frankly, this is one of those cases where the guidelines are largely irrelevant. Now, granted, I guess they do serve as a guide.
>
> But regardless of what the guidelines would say, I would still be considering his prior criminal history. I'd still be giving him the benefit of knowing that those offenses happened quite a few years ago and that he had a period in society where he was crime free, or at least arrest free, but I will take that as crime free.
>
> I also take into consideration the seriousness to the individual, that is the victim, and to the community at large. As I said from the very beginning, this was and is a brutal beating. You have heard from Mr. Mehta that he has sustained serious injuries that have not only caused him a great deal of pain and discomfort, prevented him from moving about, caused an imposition on his family and will affect him for the rest of his life. Just as — and this is rare for me to feel this way — the outcome of your sentence should affect you for the rest of your life.
>
> The video displays an aggressive, angry man backing an older man into a corner, arguing with him as, I'll say, a friend of yours tried to keep you away, to dissuade you from your conduct. You couldn't, you wouldn't and you continued for a matter of moments.

---

[4] N.T., 5/11/2016, at 2.

This was not a fit of anger, a momentary loss of judgment or a burst, but a cold, calculated, continuing assault for a period of over 15 minutes. Once the friend gave up and walked away, and you had beaten Mr. Mehta to the ground, you walked out, came back in, your girlfriend interceded. You pushed her back and left. You came back in. She interceded. You pushed her back and left. You came back in again. You left. You came back in again and continued your assault. And you violated and physically assaulted her, for which criminal charges could have been brought. All over a period of such an extent of time that a person of the character that you want me to believe you are, somewhere, somewhere the goodness of character would have shown through and stopped your actions. And it ultimately was only through the intercession of the police with pointed firearms that you stopped.

Looking at the Bill of Information, I have what I calculate to be [13 and a half years] for which I can impose as a minimum sentence. … I consider doing that because of the depth of the depravity that you showed in this assault.

But you said something to me. You want the opportunity to get back to society and prove that you're the [sic] human. ….

****

On Count One of the Bill of Information, it's ordered and directed that you pay the costs and undergo imprisonment in a state correctional institution for a period of not less than nine nor more than 20 years. …

****

No further penalty on Counts Two, Three and Four.

N.T., 5/11/2016, at 46–49.

- 9 -

It bears emphasis that the court deferred the sentencing hearing to allow the defense time to gather mitigation evidence. *See* N.T., 5/11/2016, at 2. Further, the trial court's on-the-record statement set forth above clearly shows that the trial court considered the Section 9721(b) factors (i.e., protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant). **Contrary to Bey's argument,** our review confirms the trial court's position that:

> In fashioning [Bey's] sentence, [the trial court] took into account numerous factors specific to this case after hearing testimony offered by both the Commonwealth and [Bey]. The [trial court] considered mitigating evidence of [Bey], including the findings from [Bey's] psychological evaluation, the fifteen year span [Bey] was not engaged in criminal activities and [Bey's] testimony relating to his desire to re-renter society and prove that he is a good person beyond his actions. Furthermore, the Court adequately stated its reasons for imposing [Bey's] sentence on the record[.]

Trial Court Opinion, 11/28/2016, at 3–4.

Moreover, the trial court held a hearing on Bey's motion for reconsideration. Bey's counsel presented the testimony of Dr. Allan Tepper, who discussed his psychological report that had been submitted at the sentencing hearing. In addition, Bey expressed his remorse to the court. The victim also testified regarding the impact the crime had on him. Thereafter, Bey's counsel argued to the court that Bey "certainly had a difficult situation," that Bey was remorseful, that Bey's "prior record is not for violence[, and] is an older, prior record," and that Bey took responsibility

- 10 -

and pled guilty. N.T., 8/31/2016, at 28–30.  Bey's counsel asked the court to

consider imposing a standard range sentence of 72 to 90 months.  ***See id.***

at 30.

Again, the trial court explained its reasoning, stating:

All right.  Let me say this.  I would suspect that if you would look at my ten-plus years on the criminal bench, the number of times I exceeded the aggravated range could probably be counted on one hand.

I don't doubt Dr. Tepper's conclusions, the basis for his conclusions.   I actually don't discount or disbelieve the expressions of remorse by Mr. Bey.  Sure, I'm sure part of that comes from remorse for his own situation, but I truly believe he has some remorse for the injuries inflicted upon Mr. Mehta.

Everyone agrees that a lengthy period of incarceration is appropriate here.  The question becomes, what exactly is an appropriate length?  I'm required to and I do, in fact, look to the guidelines for guidance.  In this particular matter of greatest significance, I look to the facts themselves as they are depicted on the video, which are essentially uncontested.  And what that video shows is not an individual exploding and lashing out, it shows a person exploding, lashing out, being coerced away, returning and continuing to mete out a beating, leaving, coming back, I don't recall off the top of my head how many times that cycle continued.  But there was more than adequate time to cool off, to reflect, to accept the prodding of the woman in his life to stop.  And he even pushed her aside and continued to beat the victim.

Dr. Tepper has recited a number of reasons that might have caused [Bey] to lash out. One of those will continue to be the case.  Actually, I guess all of them will be.  One in particular, we know that individuals that have been incarcerated, particularly those that have been incarcerated for lengthy periods of time, have a great deal of difficulty in securing employment that provides them a living wage.

- 11 -

I accept the statement that that probably plays upon a person's ego, their view of themselves, because that's going to continue no matter what the sentence I impose will be.

And, of course, it causes me concern that upon his release, and there's no question the day will come when he is released, whether the same frustration will arise again[.] …

The request here is for me to reduce the sentence I have imposed, claiming that it was excessive, it exceeds what is necessary to protect the public and rehabilitate the defendant. Where I disagree with Mr. Mehta [is] I truly believe that an individual who has done wrong should, in fact, repent, and then that does count to mitigate one's conduct.[5] If not, then our system is a farce, because if we are not going to try to rehabilitate people, then for each first offender of any offense, we should probably just lock them away for the rest of their lives, but that's not the foundation of our system.

While we fail miserably in rehabilitating people, it should still be, and is, a goal. But the reality of it is, I see no difference in how [Bey] would be rehabilitated if I were to reduce his sentence from a minimum of what, 108 months to 102, because at the very least his actions require a sentence in the aggravated range.

The longer he is away, the longer society is protected from his conduct. And so I think those two issues – and I'm sure I addressed them at the time I initially imposed sentence and I don't want to rehash my entire thought process. But in considering whether to reduce this sentence, while I accept what I've heard from both Dr. Tepper and the defendant, I cannot get past what is not just a beating, but really a series of beatings, interrupted, providing for the opportunity to give thought to hesitate, to pause. If this was a murder case we would be talking about premeditation, because certainly ample time occurred.

---

[5] Mr. Mehta had testified that "to repent afterwards is no use." N.T., 8/31/2016, at 27.

- 12 -

I don't know what the defendant was seeking by coming back time after time, but to mete out upon Mr. Mehta the beating he did, perhaps to take out a lifetime of frustrations is unacceptable, it's dangerous, and the request to amend the sentence is denied.

N.T., 8/31/2016, at 33–38.

The trial court considered Dr. Tepper's testimony regarding Bey's childhood and psychological issues, as well as Bey's remorse. The trial court also considered that Bey's aggravated assault crime was "a cold, calculated, continuing assault for a period of over 15 minutes,"[6] which involved "not just a beating, but really a series of beatings, interrupted, providing for the opportunity to give thought to hesitate, to pause."[7] In this regard, the Supreme Court has instructed that "[f]actors that are not specific elements of an offense may be considered by the sentencing court in imposing its sentence." **Perry, supra**, 32 A.3d at 242. Furthermore, this court may not "reweigh the reasons offered by the trial court." **Walls, supra**, 926 A.2d at 966.

Based on our review, we discern no basis upon which to disturb the decision of the trial court. The record demonstrates the trial court took into account Bey's mitigating evidence, weighed all relevant sentencing factors under Section 9721(b), and fashioned an individualized sentence with

---

[6] N.T., 5/11/2016, at 47.

[7] N.T., 8/31/2016, at 38.

respect to Bey that is fully supported by the court's reasons stated on the record at sentencing, and reiterated at the hearing on the motion for reconsideration. As such, we cannot conclude the sentence is "unreasonable."[8] 42 Pa.C.S. § 9781(c)(3), **supra**.

Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2017

_____

[8] To the extent that Bey cites **Commonwealth v. Simpson**, 510 A.2d 760, 763 (Pa. Super. 1987) for the proposition that "there must be a balanced consideration as to the potential for rehabilitation and the minimum sentence feasible to accomplish that result," Bey's Brief at 10, we point out that "under the current Sentencing Code there is no requirement that a sentencing court's imposition of sentence must be the minimum possible confinement[.]" **Walls, supra**, 926 A.2d at 965.