J-S37040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :             PENNSYLVANIA
                                  :

             v.                            :

JULIAN DUMAS,                     :
                                  :
            Appellant         :    No. 1606 EDA 2017

Appeal from the Judgment of Sentence March 22, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004787-2016

BEFORE: OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:           **FILED JULY 24, 2018**

Appellant, Julian Dumas, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his open guilty plea to one count of aggravated assault, possession of a firearm prohibited, firearms not to be carried without a license, carrying firearms in public, possession of an instrument of crime, simple assault, and recklessly endangering the welfare of another.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On February 2, 2016, Appellant was arrested, and on August 17, 2016, he proceeded with counsel to a guilty plea hearing at which the Commonwealth set forth the facts underlying Appellant's instant case as follows:

---

[1] 18 Pa.C.S.A. §§ 2702(a), 6105(a)(1), 6106(a)(1), 6108, 907(a), 2701(a), and 2705, respectively.

---

\*   Former Justice specially assigned to the Superior Court.

[If] the Commonwealth was to go to trial it would present the live testimony of Police Officer Thomas Dalescio (SP) and Police Officer Jeffery Opawski (SP) both present in the courtroom today.

Your Honor, they would indicate that on February 2, 2016, around 6:30 or so in the evening they were working as 19th district police officers. Your Honor, they responded to a radio call for gunshots in the area of 55th and Cherry Streets in West Philadelphia. Approximately six minutes later they responded to another gunshot for a person with a gun in the area of 55th and Arch Streets.

Your Honor, there was flash accompanying that radio call. It was for a black male with dreadlocks. As police were surveying the area they observed [Appellant] who fit the flash, Your Honor. At the time of [Appellant's] arrest he did have dreadlocks. Your Honor, when the officers approached [Appellant] he looked towards them. He grabbed his waistband and he immediately ran southbound on 55th Street.

Officer Opawski (SP), who was the passenger in the vehicle, [] exited and began foot pursuit with [Appellant]. Officer Dalescio (SP) continued following in his police vehicle yelling for [Appellant] to stop. Your Honor, [Appellant] ignored police commands and while being pursued he was continuously grabbing at his waistband.

Your Honor, at some point in time during the pursuit of the offender [Appellant] did turn towards Officer Dalescio (SP), did attempt to drop his firearm from his waistband, pointing it in Officer Dalescio's (SP) direction. Officer Dalescio (SP) discharged his firearm, Your Honor, missing [Appellant].

Eventually, [Appellant] was able to be apprehended. Recovered from [Appellant] was a Ruger .22 caliber long rifle, serial number. . ., which was loaded with one live round in the chamber and nine live rounds in the magazine. Your Honor, it was placed on property receipt. . .9019311. Your Honor, it was in fully operable condition at the time [Appellant] possessed it.

Your Honor, [Appellant] is prohibited from possessing a firearm because he [is] on Your Honor's probation for at least two separate PWID cases. One specific case. . .makes him ineligible to possess a firearm. That would be the sum and substance of the Commonwealth's case.

N.T., 8/17/16, at 4-6. The Commonwealth clarified that the firearm was recovered from the ground, as opposed to Appellant's person, after Appellant dropped the gun and fled in response to the officer firing his weapon. *Id.* at 6.

Appellant entered a non-negotiated, open guilty plea to the charges indicated *supra* and sentencing was deferred for preparation of a presentence investigation report and mental health. *Id.* at 7-8.

On March 22, 2017, Appellant proceeded with counsel to a sentencing hearing at which the trial court stated it was sentencing based on "the facts of the case, what the charges are, what the guidelines call for, for what the sentencing can be, minimum, maximum, middle." N.T., 3/22/17, at 4-5.

The trial court heard from Appellant's girlfriend, who indicated that she and Appellant have a daughter, and she wishes for Appellant to "come home." *Id.* at 7. Defense counsel informed the trial court that, prior to Appellant's arrest in the instant case, he was working the overnight shift and stocking shelves at ShopRite. *Id.* at 8. Defense counsel noted Appellant is a high school graduate and, if released from prison, he would seek to get his job back at ShopRite. *Id.*

The Commonwealth reiterated the facts underlying Appellant's instant case, as well as noted that Appellant was on probation for two separate possession with intent to deliver cases at the time he committed his current offenses. *Id.* at 10. The Commonwealth suggested the evidence reveals

"[Appellant] is a drug dealer in West Philadelphia." *Id.* The Commonwealth noted Appellant has tattoos suggesting he sells narcotics in West Philadelphia, and in the current case, he pointed a loaded firearm at a police officer in West Philadelphia, thus causing the police officer to discharge his firearm because he was in fear for his life. *Id.* at 10-11. The Commonwealth indicated it was a "big deal" to the officer that he had to fire his weapon and, as is routine, the officer had to be removed from the street pending an investigation. *Id.* at 11.

The trial court heard from Appellant, who said that he "would like to man up for the fact that [he] had the gun but [he] did not point it at no cop." *Id.* at 12. Appellant indicated he is "a man of [] responsibilities" and he would "like to return home to [his] family and work." *Id.* at 13.

The trial court specifically indicated:

> I've looked at the sentencing guidelines. I've listened to the arguments of both counsel. I've listened to the girlfriend of [Appellant]. I've listed to [Appellant] in his right of allocution. I'll sentence [Appellant], for the protection of the public, prevention, punishment, [and] rehabilitation.
>
> On the [instant case], aggravated assault, five to ten years. Bill two, possession of a firearm prohibited, five to ten years. Bill three, firearms not to be carried without a license.
>
> Now, the five to ten on the possession of a firearm and aggravated assault will run concurrently together, five to ten. The firearms not to be carried without a license, F3, will be consecutive to those. That's three and one half to seven years.
>
> Now the VOP, first of all I'm going back. So you understand how you structure[] it, [on the unrelated case the] probation is revoked. That's a new five to ten-year probation to run concurrent with that agg[ravated] assault and possession of the firearm [in the current case].

- 4 -

Now the possession of firearms will be ten years consecutive to that. Possession of an instrument of crime, five years' consecutive probation for a total of ten years' probation running to that eight and [one] half to 17 years. That will be followed by VOP [on the unrelated case,] which will be a consecutive ten-year probation.

So that your total sentence here is eight and one half to 17 years plus 20 years' consecutive probation. That's your total sentence here today. Of course, he gets credit for anytime he's been in custody.

*Id.* at 14-15.[2]

Appellant filed a timely, counseled motion for reconsideration of sentence, which the trial court denied on April 19, 2017. This timely, counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant contends the trial court abused its discretion in imposing a sentence of five years to ten years in prison for aggravated assault[3] since the trial court misapplied the sentencing guidelines and/or unknowingly imposed a sentence for aggravated assault that far exceed the highest recommended guideline sentence. Appellant contends this Court should vacate and remand for resentencing since the trial court purported to sentence

_____

[2] The trial court imposed no further penalty for the remaining convictions.

[3] Appellant does not dispute the statutory maximum for aggravated assault is ten years in prison, and therefore, the trial court's sentence of five years to ten years in prison for aggravated assault does not exceed the statutory maximum.

within the sentencing guidelines but applied the guidelines erroneously. ***See***

42 Pa.C.S.A. § 9781(c)(1). In sum, Appellant contends the trial court failed

to "start with the correct guideline range" for aggravated assault, thus abusing

its discretion in sentencing Appellant as to this charge.[4] ***See*** Appellant's Brief

at 10 (citations omitted).

Appellant's claim presents a challenge to the discretionary aspects of his

sentence. When an appellant challenges the discretionary aspects of his

sentence, we must consider his brief on this issue as a petition for permission

to appeal. ***See Commonwealth v. Moury***, 992 A.2d 162 (Pa.Super. 2010).

Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four[-]part analysis to determine: (1)
> whether [A]ppellant has filed a timely notice of appeal, ***see***
> Pa.R.A.P. 902 and 903; (2) whether the issue was properly
> preserved at sentencing or in a motion to reconsider and modify
> sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether [A]ppellant's brief
> has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a
> substantial question that the sentence appealed from is not
> appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Moury***, 992 A.2d at 170 (citation omitted).

---

[4] "[W]hile a guilty plea which includes sentence negotiation ordinarily precludes a defendant from contesting the validity of his. . .sentence other than to argue that the sentence is illegal or that the sentencing court did not have jurisdiction, open plea agreements are an exception in which a defendant will not be precluded from appealing the discretionary aspects of the sentence." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 n.5 (Pa.Super 2005). "An 'open' plea agreement is one in which there is no negotiated sentence." ***Id.*** at 363 n.1. Here, Appellant's guilty plea included no negotiated sentence.

Here, Appellant filed a timely notice of appeal, and, arguably, preserved the specific issue in his motion for reconsideration. His brief contains a separate Rule 2119(f) statement, and his issue presents a substantial question permitting our review. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 779-80 (Pa.Super. 2009). Accordingly, we shall proceed to review the merits of Appellant's sentencing claim.

"[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion." *Commonwealth v. Perry*, 612 Pa. 557, 32 A.3d 232, 236 (2011). An abuse of discretion "is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless 'the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will.'" *Id.* (quotation omitted). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. *Id.*

> Here, in developing his argument, Appellant relevantly posits:

> The court cited the guideline ranges only for [Section] 6105 [pertaining to possession of a firearm prohibited], which carried an offense gravity score ("OGS") of 10 and therefore was the most serious offense at issue. Given Appellant's prior record score of 5, the applicable guideline ranges for [Section] 6105 are 60-72 (+/-12), which was correctly noted by the court (N.T., 3/22/17, 6). The court's sentence on that charge, 5-10 years, fell within the recommended range. However, the court imposed the same sentence of 5-10 years on [Section] 2702, apparently unaware that the OGS for that offense was either 6 or 8. . . .[T]he court's sentence on the aggravated assault charge of 5-10 years far exceeded the upper limit of the sentencing guidelines.

Appellant's Brief at 9-10.

Initially, we note that Appellant's contention the "court cited the guidelines ranges only for [Section] 6105" is misleading. In fact, at the sentencing hearing, *defense counsel* stated generally that "[t]his is a 10/5, Your Honor. Guidelines are 60 to 72 plus or minus 12." N.T., 3/22/17, at 6. We disagree with Appellant's reasoning that, based on defense counsel's statement, the trial court was unaware of the applicable sentencing guideline ranges for aggravated assault. Rather, a review of the transcript from Appellant's sentencing hearing, as well as the trial court's Rule 1925(a) opinion, makes clear that, contrary to Appellant's argument, the trial court was cognizant of the relevant law and guidelines when it sentenced Appellant on the aggravated assault charge.

For example, during the sentencing hearing, the trial court expressly stated it "looked at the sentencing guidelines" and was sentencing based on "what the guidelines call for." *Id.* at 4, 14. Further, during the sentencing hearing, the trial court indicated it was imposing a sentence in accordance with the particular circumstances of Appellant's case and "for the protection of the public, prevention, punishment, [and] rehabilitation." *Id.* at 14.

Moreover, in its Rule 1925(a) opinion, the trial court relevantly stated:

> [T]his court considered the Sentencing Guidelines when formulating [Appellant's] sentence. The Sentencing Guidelines, when they apply, are only mandatory to [t]he extent that they must be considered when sentencing. "Although a sentencing court is not required to follow the guidelines, it is obligated to

provide, on the record, a statement of the reason or reasons for deviation from the guidelines." This court did, in fact, consider the guidelines in sentencing [Appellant], but deviated from them based on the gravity and threated violence of the crimes involved, the need to protect the public, [Appellant's] criminal history, and the need to rehabilitate [Appellant]. Because this Court explained its reasons for deviating from the guidelines, it did not [abuse its discretion]. . . .The sentencing guidelines indicate a guideline range for the Aggravated Assault charge of fifteen to twenty-one (15-21) months plus or minus six (6) months. . . .This court knowingly sentenced [Appellant] outside of the guidelines because [Appellant] pointed a gun at a police officer forcing the officer to discharge his weapon.

[Appellant] asserts in his [Rule] 1925(b) Statement [] that this court "failed to calculate and apply the correct sentencing guideline range for the charge of aggravated assault. . . ." [Appellant] does not specify where in the calculation he believes this court erred, however upon [a] thorough review of the record[,] the most likely interpretation is that he believes this court improperly identified the offense gravity score as a 10. At no point [did] this court or the Commonwealth explicitly state that the offense gravity score for Aggravated Assault is a ten (10). Both merely acknowledge that ten (10) is the highest offense gravity score applicable in this case. Possession of Firearms Prohibited is the lead charge in this case, and [it] carries an offense gravity score of ten (10).

***

More specifically, this court took into account the mitigating information offered by [Appellant] at sentencing, as well as the Presentence Investigation report. He appears to have a stable family life with his girlfriend and child, and he is working to support his family. [Appellant] worked at ShopRite at the time of the arrest, and [he] is also a high school graduate. He took responsibility for his actions by entering into a guilty plea. Unfortunately, the aggravating factors in this case far outweigh the mitigation presented. [Appellant] was carrying a loaded gun while on this court's probation. Most importantly, [Appellant] chose to point that firearm at a Philadelphia Police officer, causing the [o]fficer to discharge his weapon. This dramatic escalation in the violence of [Appellant's] criminal conduct is deeply troubling, and leads this court to believe that an above guidelines sentence was necessary to protect the public and [] rehabilitate [Appellant].

- 9 -

> Thus[,] this court did not abuse its discretion in sentencing [Appellant].

Trial Court Opinion, filed 7/13/17 (citations omitted).[5]

We find no abuse of discretion. As the sentencing transcript reveals, and the trial court's opinion confirms, the trial court recognized the applicable guidelines for aggravated assault. Further, the trial court recognized that it was entitled to impose a sentence that deviated upwards from the aggravated range so long as it explained its reasons. Moreover, the trial court did explain its reasons-both at the sentencing hearing and in its Rule 1925(a) opinion. Furthermore, as the trial court explained, defense counsel's statement regarding the offense gravity score and guideline range was understood by the trial court to apply to the lead charge, possession of a firearms prohibited. Accordingly, we conclude Appellant is not entitled to relief on his discretionary aspects of sentencing claim.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/18

---

[5] The trial court's Rule 1925(a) opinion is not paginated.