J-S75037-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL HARRISON, | : | |
| | : | |
| Appellant | : | No. 800 WDA 2017 |

Appeal from the Judgment of Sentence May 23, 2017
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0007837-1999

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED JANUARY 26, 2018

Michael Harrison ("Harrison") appeals from the judgment of sentence, imposed upon resentencing, for his conviction of first-degree murder.  See 18 Pa.C.S.A. § 2502(a).  We affirm.

This Court previously set forth the factual history underlying this appeal as follows:

On March 7, 1994, Kevin Lee [("Lee")] stole a four-door, 1986 Olds Cutlass Cier[]a and drove it to Isaac Butler's [("Butler")] house in the Larimer Avenue section of Pittsburgh.  There[, Harrison], Lee and Butler discussed perpetrating a retaliation shooting to avenge the death of Butler's brother, who had been killed in December, 1992, in a shooting by rival CRIP gang members.

[Harrison] gave Butler a .380 semi-automatic pistol.  Lee had a sawed-off shotgun.  [Harrison] drove Lee and Butler to the area of Lincoln Avenue[,] where they turned up Dean Street.  There they observed Byron Patton [("Patton")] and Jason Gaines [("Gaines")] walking down the street.  Either Lee or Butler yelled at [Harrison] to stop the car, and they got out[,] while [Harrison] remained in the car.  [Harrison] heard four shots from the handgun, a pause, screaming, and a loud blast consistent

with a shotgun being fired. Lee and Butler ran back to the car and [Harrison] drove away.

Officers William Gorman and Charles Johnson arrived at the scene at 10:30 P.M. They found Patton on the porch of 3528½ Dean Street[,] with a gunshot wound to the head[,] and Gaines shot in the neck, shoulder and arm. Two large caliber casings were found adjacent to the porch area. Three .380 shell casings and a bullet fragment were found on the sidewalk.

[Harrison] drove back to Butler's house, where the three men stayed for a couple of hours and discussed getting rid of the vehicle. Around 3:00 A.M., Lee took the shotgun and left. [Harrison] hid the .380 [handgun] under the porch of an abandoned house across the street from Butler's house. [Harrison] and Butler drove the car to Washington Boulevard, turned off under the Lincoln Avenue bridge[,] and abandoned it. As they were doing so, the police pulled up and [Harrison] and Butler escaped up a flight of stairs. Officer Scott Curly recovered the vehicle and found a .380 casing in a vent in the windshield.

In November[] 1994, a .380 semi-automatic [handgun] was recovered in a desk in a dormitory area assigned to Travis Hill [("Hill)"] at the Keystone Job Corps Center in Luzerne County. Hill lived in the Larimer section of Pittsburgh, and while home for Thanksgiving, a friend told him that a gun was hidden under a rock between two abandoned houses. The gun, cartridge casings and bullet fragment were submitted to the Allegheny County Crime Lab for testing. The casings and fragment were found to have been fired from the gun.

[] Patton was pronounced dead at 1:33 A.M. on March 8, 1994, at Presbyterian University Hospital. His body was taken to the Allegheny County Coroner's Office[,] where an autopsy was performed by Dr. Eric Vey. The cause of death was a gunshot wound to the head.

Harrison was seventeen years old at the time of the murder. On May 14, 1998, [Harrison] gave a statement to Pittsburgh Homicide Detective Thomas Foley, in which he essentially confessed to being an accomplice to first[-]degree murder.

> On March 29, 2000, following a jury trial, Harrison was found guilty of first-degree murder. 18 Pa.C.S.A. § 2501(a). That same day, Harrison was sentenced to life in prison.[1] Harrison filed a direct appeal. On February 29, 2004, this Court affirmed his judgment of sentence. Commonwealth v. Harrison, 622 WDA 2002, slip. op. at 13 (Pa. Super. Feb. 19, 2004). On March 19, 2004, Harrison filed a [P]etition for allowance of appeal with the Pennsylvania Supreme Court. That [P]etition was denied on June 17, 2004. Commonwealth v. Harrison, 853 A.2d 360 (Pa. 2004) (Table).

Commonwealth v. Harrison, 108 A.3d 128 (Pa. Super. 2014) (unpublished memorandum at 1-3) (footnote and emphasis added, citation to trial court opinion and some paragraph breaks omitted, footnote in original moved to body).

In the ensuing years, Harrison filed several Petitions for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, all of which were unsuccessful.

On March 14, 2016, Harrison filed a pro se PCRA Petition based upon the decision in Montgomery v. Louisiana, 136 S. Ct. 718 (2016), to support his claim that his mandatory LWOP sentence was unconstitutional. The Montgomery Court held, inter alia, that "when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule." Id. at 729. In so ruling, the Montgomery Court concluded that the new substantive rule of constitutional law announced in Miller v. Alabama, 567

_____

[1] The trial court imposed a mandatory sentence of life in prison without the possibility of parole (hereinafter "LWOP"), under 18 Pa.C.S.A. § 1102(a).

- 3 -

U.S. 460, 465 (2012) (holding that sentencing schemes that mandate LWOP for defendants who committed their crimes while under the age of eighteen violate the Eighth Amendment's prohibition on "cruel and unusual punishments"), applies retroactively. Montgomery, 136 S. Ct. at 736. Subsequently, counsel entered an appearance on behalf of Harrison. The trial court then scheduled a status conference on the matter.

At the status conference on July 26, 2016, the attorney for the Commonwealth conceded that Harrison's LWOP sentence was unconstitutional under Montgomery/Miller, and that the court must resentence Harrison. The trial court thereafter entered an Order scheduling a resentencing hearing before the Honorable Terrence O'Brien ("Judge O'Brien").[2] Both parties then submitted Resentencing Memoranda. Counsel for Harrison also filed a Motion requesting the trial court to appoint a mitigation specialist, Maria Guido ("Guido"), to evaluate Harrison prior to resentencing and prepare a report, which the trial court granted.

At the resentencing hearing on April 7, 2017, Judge O'Brien heard testimony from Harrison, members of his family and friends, and Guido. At

---

[2] The trial court's Order also directed the preparation of a pre-sentence investigation report ("PSI").

the close of the hearing, Judge O'Brien resentenced Harrison to serve 30 years to life in prison.[3]

Counsel for Harrison filed a Post-sentence Motion, challenging the discretionary aspects of the sentence imposed, which the trial court denied. On May 22, 2017, Judge O'Brien entered an Order vacating the April 7, 2017 sentencing Order, and again imposing the same prison sentence, but with credit for time served from May 14, 1999.

Harrison timely filed a Notice of Appeal. The trial court did not order Harrison to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, nor did it issue a Rule 1925(a) opinion or any opinion.[4]

Harrison presents the following issue for our review: "Did the sentencing court abuse its discretion when it entered a sentence of 30 years to life upon finding that [Harrison] has been rehabilitated?" Brief for Appellant at 5.

_____

[3] It is undisputed that the sentencing statute that our legislature passed in response to Miller and its progeny, 18 Pa.C.S.A. § 1102.1 (setting forth mandatory minimum sentences for juveniles convicted of murder in the first or second degree), is inapplicable to the instant case because Harrison was convicted of first-degree murder prior to the date that the statute became effective, June 24, 2012 (i.e., the date of the Miller decision).

[4] Rather, in its Order transmitting the certified record to this Court, the trial court stated that the record would be sent "without the filing of an opinion because the reasons for the sentence imposed 'already appear of record,' i.e., in the sentencing transcript, at pages 9-11 and 115-119." Order, 7/31/17.

Harrison's claim challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. See Commonwealth v. Hill, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review, by raising it in a post-sentence motion, he must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. Hill, 66 A.3d at 363-64.

Here, though Harrison purports to have included a Rule 2119(f) Statement in his brief, see Brief for Appellant at 12-13,[5] the Commonwealth

_____

[5] Harrison's brief does not set forth the "Rule 2119(f) statement" under a separate heading preceding the argument section of the brief, in violation of the Rule. See Pa.R.A.P. 2119(f) (providing that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.") (emphasis added). Rather, in the body of his Argument section, Harrison states only that he "has included this statement setting forth the reasons to allow for appeal to challenge the discretionary aspects of his sentence, pursuant to Pa.R.A[].P. 2119(f)." Brief for Appellant at 12-13. However, Harrison does not set forth a separate Rule 2119(f) statement. Rather, following the above-mentioned sentence, he sets forth a paragraph detailing the reasons why his challenge to his sentence presents a substantial question for our review. See Brief for Appellant at 13. Under the circumstances presented in this case, we will consider this paragraph to be Harrison's "Rule 2119(f) Statement."

objects to its form, pointing to the defect mentioned in footnote 4, supra. See Brief for the Commonwealth at 11-12. The Commonwealth argues that Harrison has waived his claim. See id. (citing Commonwealth v. Bruce, 916 A.2d 657, 666 (Pa. Super. 2007) (holding that if an appellant fails to include a Rule 2119(f) statement in the brief, and the Commonwealth objects to this failure, then the appellant's discretionary sentencing claim is waived and this Court may not review it). We decline to find waiver here, where Harrison did not entirely fail to include a Rule 2119(f) statement in his brief, and his violation does not hamper our review.

Accordingly, we must determine whether Harrison has presented a substantial question for our review. Harrison asserts in his "Rule 2119(f) Statement" as follows:

> [T]his case presents a substantial question as to whether [] Harrison's sentence is appropriate. The sentencing court crafted a minimum sentence of 30 years imprisonment despite recognizing the fact that [] Harrison has been rehabilitated. A sentence such as this one – requiring an already-rehabilitated individual to remain incarcerated a minimum of 12 additional years – is manifestly excessive and unreasonable. See Commonwealth v. Cartrette, 83 A.3d 1030, 1038 (Pa. Super. [] 2013) [(en banc)] (noting that "[a] claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question." (quoting Commonwealth v. Simmons, 56 A.3d 1280, 1286 (Pa. Super. [] 2012))).

Brief for Appellant at 13 (citation to reproduced record omitted).

Initially, as the Commonwealth correctly points out, Harrison sets forth, in a later subparagraph of his Argument section, a discretionary sentencing challenge that is not included in his "Rule 2119(f) Statement" (or

- 7 -

his Statement of Questions Presented section). See Brief for the Commonwealth at 12; see also Brief for Appellant at 17-21 (asserting that the sentencing court failed to make sufficient findings to justify the sentence imposed, and to craft its sentence in accordance with the "age-related factors" that the Supreme Court discussed in Miller, supra, and this Court set forth in Commonwealth v. Knox, 50 A.3d 732 (Pa. Super. 2012)[6]). We may not look beyond Harrison's "Rule 2119(f) Statement" to determine whether a substantial question exists. See Commonwealth v. Diehl, 140 A.3d 34, 44-45 (Pa. Super. 2016) (stating that "we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists."); see also Commonwealth v. Tuladziecki, 522 A.2d 17, 19 (Pa. 1987) (stating that

_____

[6] In Knox, this Court held that a trial court, upon resentencing an offender who previously received a mandatory LWOP sentence for a murder committed at a time when the offender was a juvenile, should consider the following factors (which we will hereinafter refer to as "the Knox/Miller factors"):

> [A]t a minimum[, the trial court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

Knox, 50 A.3d at 745; see also Commonwealth v. Batts, 163 A.3d 410, 421 n.5 (Pa. 2017) (adopting and applying the Knox/Miller factors).

the "Superior Court may not … be permitted to rely on its assessment of the argument on the merits of the issue to justify post hoc a determination that a substantial question exists."). Moreover, if a defendant fails to include a discretionary sentencing issue in his Rule 2119(f) statement, and the Commonwealth objects, then the issue is waived and this Court may not review the claim. See Commonwealth v. Feucht, 955 A.2d 377, 384 (Pa. Super. 2008). Accordingly, Harrison has waived his claim that the trial court failed to make sufficient findings concerning the Knox/Miller factors to justify the sentence imposed.[7] See Feucht, supra.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

Commonwealth v. Disalvo, 70 A.3d 900, 903 (Pa. Super. 2013) (citation omitted); see also 42 Pa.C.S.A. § 9781(b).

We conclude that Harrison has presented a substantial question. See Commonwealth v. Hicks, 151 A.3d 216, 227 (Pa. Super. 2016) (in the context of a challenge to a sentence imposed on resentencing pursuant to Miller/Knox, stating that "[w]hile a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is

_____

[7] Nevertheless, even if Harrison had not waived this claim, we would determine that it does not entitle him to relief, for the reasons we detail below.

manifestly excessive, inflicting too severe a punishment, does present a substantial question."). Therefore, we will proceed to consider the merits of Harrison's argument.

We review discretionary aspects of sentencing claims under the following standard: "[S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. 2006); see also Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007) (stating that "[a]n abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."). "The rationale behind such broad discretion[,] and the concomitantly deferential standard of appellate review[,] is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Commonwealth v. Perry, 32 A.3d 232, 236 (Pa. 2011) (citation and quotation marks omitted).

The Sentencing Code sets forth the considerations a trial court must take into account when formulating a sentence, providing that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the

community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A.

§ 9721(b).

Harrison argues that his sentence is "manifestly excessive and

unreasonable" under section 9721(b), asserting as follows:

> The sentencing court found that [] Harrison has "been rehabilitated to a large degree[,]" noting also, "the fact that [Harrison] has shown genuine remorse and rehabilitation." This directly responds to one of the "general principles" espoused by section 9721(b), namely "the rehabilitative needs of the defendant." More precisely, [] Harrison no longer requires rehabilitation. Similarly, another "general principle" – the protection of the public – speaks against the court's sentence. The court noted that [] Harrison does not have a history of violence outside of the underlying offense and "there is no violence in his prison history." The court did not find that [] Harrison was likely to reoffend. The only remaining "general principle" – the impact on the life of the victim – has thus been given undue weight: an individual lost his life. [] Harrison acknowledged this impact at his sentencing hearing, and the sentencing court repeatedly emphasized [] Harrison's "genuine remorse."

Brief for Appellant at 15-16 (citations to reproduced record and paragraph

breaks omitted). Harrison further argues that he

> is exactly the type of juvenile offender envisioned by Miller – one whose 'distinctive attributes of youth' and 'immaturity, recklessness, and impetuosity' leads him to commit a terrible act based on these youthful traits and his surroundings. See Miller, 132 S. Ct. at 2465.

Brief for Appellant at 16-17. Finally, Harrison asserts that Lee and Butler,

who "were directly culpable for [Patton's] death," received lesser sentences

than Harrison. Id. at 16.

The transcript from the resentencing hearing reveals that, at the

beginning of the proceeding, Judge O'Brien stated, inter alia, that

> I have reviewed my opinion in this case. I was the trial judge in [] Harrison's case. I have reviewed the sentencing memos from both the Commonwealth and [Harrison]. I have reviewed the report of [] Guido, forensic social worker or work evaluator. I have reviewed the [PSI] prepared by the adult probation offices and I have reviewed the relevant case law .... I reviewed my entire file on this ....

N.T., 4/7/17, at 6 (paragraph breaks omitted).

Judge O'Brien then heard testimony from several witnesses presented by Harrison.[8] Harrison testified on his own behalf, and discussed, inter alia, his upbringing, the absence of his parents during his childhood, the gang culture in his neighborhood, his remorse for his role in the shootings, and his conduct in prison and participation in programs. See id. at 12-49. Harrison's counsel then presented testimony from several of Harrison's friends and family. These witnesses testified to, inter alia, Harrison's character, the personal growth that he has shown during his incarceration, his remorse, and the witnesses' willingness to assist Harrison if he was released. See id. at 49-85. Finally, Harrison presented the testimony of Guido, the mitigation specialist who had completed a resentencing evaluation concerning Harrison. See id. at 87. In sum, Guido offered her opinion that Harrison had matured, expressed sincere remorse, had a strong support system in place upon his release, and appeared to Guido to be rehabilitated. See id. at 92-96.

---

[8] The Commonwealth did not present any witnesses, noting that the victims' families were unavailable. See N.T., 4/7/17, at 11.

Judge O'Brien then stated as follows prior to imposing sentence:

I have heard the testimony, I've read the record before this proceeding and I believe that [] Harrison does have a strong support system, a strong reentry plan in terms of family support and people willing to help him when he gets out, if the parole board deems it appropriate for him to get out.

I do believe he has true remorse for his conduct. He certainly does not have an exemplary prison record, but as [Harrison's counsel] points out, he hasn't had any serious instances since 2006. Having a shank in your cell is serious.[9] I'm not sure I buy his explanation for that. I'm [sic] don't know what goes through the mind of a prisoner. I expected him to say he had it for self-defense, but he didn't say that either. The point is there is no violence in his prison history.

There was a recent conviction of prison moonshine or some sort of alcohol[,] which is not an ideal situation in prison, but again, it's not what I call a serious infraction. There are serious infractions that take place in prison[,] and he has not gotten involved in any violence in prison and he's been there a long time. The last time he did have a serious infraction was 2006. I've taken that into account two [sic]. I've also taken into account he was the oldest of three juveniles who participated in this murder and of course[,] it's built in he had the specific intent to kill. ... This is as bad as you can get: First degree murder, even though he was not the triggerman.

He was only three to four months shy of 18[, i.e., at the time of the murder]. If he had done this on the day after his 18th birthday[,] we wouldn't be here today. He would be in jail for the rest of his life.

I have considered all of the Batts factors that were enunciated in Knox, [] and I have considered the current

---

[9] One of Harrison's prison misconducts concerned prison guards discovering a sharpened metal shank in Harrison's cell. N.T., 4/7/17, at 98. Upon questioning by Judge O'Brien, Harrison alleged that he (1) intentionally placed the shank in his cell for the prison guards to discover it and place him in "the hole," away from general population; and (2) had no intention to use the shank. Id. at 103-04.

statute, which does not apply, of course, to [] Harrison. And actually we look at the statute, which is 18 Pennsylvania Consolidated Statute Annotated, Section 1102.1.[10] It applies to a 15-year-old juvenile or older, that person would be required to receive 35 to life and[,] under the age of 15[,] would be 25 to life and, of course, [] Harrison is very close to 18 years old at the time of this crime. It does trouble me that [Harrison] was the oldest of the three [co-conspirators,] and he was very nearly an adult.

We cannot forget there was a dead person involved in this case[, Patton,] and that person had a family too. I'm certainly taking into account [Harrison's] rehabilitation and I do think he's been rehabilitated to a large degree.

But that's not the only factor I can take into account, even if I concluded he's ready to go on the street and he's not likely to commit another violent crime. No one knows whether that is true or not, but even if I concluded that, as a matter of fact, that wouldn't be the ending point.

I have to consider all of the factors enunciated in Batts

_____

[10] Though section 1102.1 is inapplicable to offenders who were convicted prior to the Miller decision, the Pennsylvania Supreme Court in Batts, supra, explained that

when determining the appropriate minimum term of incarceration for pre-Miller offenders … [such as Harrison], sentencing courts should be guided by the minimum sentences contained in section 1102.1(a) of twenty-five years for a first-degree murder committed when the defendant was less than fifteen years old and thirty-five years for a first-degree murder committed when the defendant was between the ages of fifteen and eighteen.

Batts, 163 A.3d at 458 (emphasis added, footnote omitted); see also 18 Pa.C.S.A. § 1102.1(a).

and Knox[,] and I understand Justice Baer's suggestion that we use this as a starting point[,[11]] and also [the Commonwealth attorney's position,] and frankly I can easily give 35 to life and I'm sure it would not be reversible error.

I do think that is too much. I really do. Given his genuine remorse and all of the factors in this case I think the sentence I'm about to impose is the appropriate one given all of the facts and circumstances[,] and the fact that he has shown genuine remorse and rehabilitation.

So, [] Harrison, I sentence you to a period of incarceration of not less than 30 nor more than life. You shall have the opportunity to be considered by the parole board.

N.T., 4/7/17, at 115-20 (footnotes added).

Contrary to Harrison's claims, we conclude that there was no abuse of discretion evidenced by Judge O'Brien's imposing the challenged sentence after commenting that Harrison had been "largely rehabilitated," and had showed genuine remorse. Rather, those comments merely indicate that Judge O'Brien had considered mitigating factors. Further, counter to Harrison's implication, Judge O'Brien never found that "Harrison no longer requires rehabilitation." Brief for Appellant at 15.

Moreover, because Judge O'Brien had the benefit of a PSI, which he expressly stated he had reviewed, it is presumed that he was aware of

_____

[11] Judge O'Brien refers to Justice Baer's Concurring Opinion in the original Batts decision, Batts I, wherein he stated that a trial court, in resentencing an offender whose conviction pre-dated Miller, should be guided by the policy determination made by the General Assembly in section 1102.1(a) as to the minimum sentence a juvenile convicted of first-degree murder should receive. See Commonwealth v. Batts I, 66 A.3d 286, 300 (Pa. 2013) (Baer, J., concurring).

relevant information regarding Harrison's character, and weighed those considerations along with any mitigating factors. See *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013); *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (stating that "[t]he sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors.") (citation omitted). Additionally, Judge O'Brien was further informed by the detailed mitigation report and testimony of Guido, which gave the court an even more in-depth knowledge of any mitigating factors (including, inter alia, Harrison's troubled childhood and the gang-riddled neighborhood, his remorse for his role in the shootings, and his largely good conduct and growth while in prison).

Judge O'Brien also expressly stated that he had considered the Knox/Miller factors, *see* N.T., 4/7/17, at 118,[12] and his comments prior to sentencing Harrison reflected such consideration. Finally, the minimum prison sentence that Judge O'Brien imposed, 30 years, is five years less than the mandatory minimum sentence that, had Harrison been convicted after the effective date of 18 Pa.C.S.A. § 1102.1(a), the statute would mandate.

_____

[12] Additionally, Judge O'Brien had considered both parties' in-depth arguments concerning the Knox/Miller factors prior to imposing sentence. *See* N.T., 4/7/17, at 108-14.

Accordingly, as we conclude that Judge O'Brien's sentence was not (1) the result of "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous," see Walls, supra; or (2) improperly excessive, Harrison's discretionary sentencing challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/26/2018